**P. Sidney NEUWIRTH, D.D.S.,**
**Plaintiff–Appellant,**

v.

**LOUISIANA STATE BOARD OF DEN-**
**TISTRY, et al, Defendants–Appellees.**

No. 86–3902.

United States Court of Appeals,
Fifth Circuit.

May 23, 1988.

William P. Quigley, New Orleans, La., for plaintiff-appellant.

Patricia J. Hakes, Guy Wootan, Wootan & Stakelum, New Orleans, La., William J. Guste, Jr., Atty. Gen., Baton Rouge, La., for defendants-appellees.

Before WISDOM, GARWOOD, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Dr. P. Sidney Neuwirth filed this § 1983 [1] action, alleging that the refusal of the Louisiana State Board of Dentistry to grant him a dental license pursuant to its reciprocity statute violated his constitutional and statutory rights and seeking declaratory and injunctive relief therefore. The District Court found that Dr. Neuwirth had no constitutionally protected property or liberty interest in obtaining a waiver of Louisiana's examination requirement for admission to practice dentistry. Alternatively, the court held that Dr. Neuwirth had received procedural due process and was not deprived of substantive due process by the dental board.

■ Appellant P. Sidney Neuwirth, D.D.S., licensed to practice dentistry in the state of Illinois since 1938,[2] and an Assistant Clinical Professor at the Louisiana State University School of Dentistry since 1981, sought a license to practice dentistry in Louisiana. In 1983 Neuwirth was granted a restricted license by the Louisiana State Board of Dentistry pursuant to La. Rev.Stat.Ann. § 37:752(3) (West 1974).[3] On three separate occasions, Neuwirth applied for a general special license by reciprocity pursuant to La.Rev.Stat.Ann. § 37:768 (West 1974). All three applica-

---

**1.** 42 U.S.C. § 1983.

**2.** Dr. Neuwirth practiced dentistry in Illinois from 1938 until 1980, except for a period of two years of active service in the U.S. Army, before moving to Louisiana to teach at LSU's dental school.

**3.** Section 37:768 was repealed by the Louisiana legislature in 1986. *See* La.Rev.Stat.Ann.

§ 37:768 (West Supp.1986). We do not agree with appellee's contention that this amendment moots the case. If Dr. Neuwirth had a constitutionally protected liberty or property interest under the statute before its amendment, the Dentistry Board's action might arguably have violated that interest. The injury from that violation remains despite a change in the law.

tions were denied by the Board. Each time, Neuwirth was informed that his application was denied because it was the Board's policy to grant regular dental licenses only through the examination process. Each time, Neuwirth was also given the opportunity to present his case before the Board.

In February 1986, Neuwirth filed this action against the Louisiana State Board of Dentistry and J. Roy Chustz, D.D.S., the President of the Board of Dentistry, alleging that the denials of his applications "are without rational basis, contrary to state law and ... arbitrary and capricious." Chustz was sued only in his official capacity. Neuwirth requested the district court to (1) enter a judgment declaring that his constitutional and statutory rights were violated; (2) order the defendants to grant him a full license by reciprocity or issue reasons why he has not been granted a license and give him the opportunity to contest those reasons; and (3) award him attorney's fees and costs. Neuwirth filed a motion for summary judgment alleging that the defendants' policy of not granting general licenses by reciprocity violates the due process clause of the fourteenth amendment.

As noted, the district court granted defendants' motion for summary judgment.

■ Neither the parties nor the trial court suggested that the eleventh amendment may bar the federal court's jurisdiction to hear this case. Appellees, however, raised the issue at oral argument before us and by a letter a few days prior thereto. We may properly consider the issue even at this stage of the proceeding, because of the strong federalism concerns behind the amendment. *See Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 188–89 (5th Cir.1986); *McKay v. Boyd Const. Co.*, 769 F.2d 1084, 1086 (5th Cir.1985).[4]

■ The Eleventh Amendment provides:

> The judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State.

This language has been construed to bar actions brought in federal court against state governments by anyone other than the federal government or another state. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 97–102, 104 S.Ct. 900, 906–09, 79 L.Ed.2d 67 (1984). Absent a waiver or consent by the state or an express negation of immunity by act of Congress, the eleventh amendment prohibits a federal court from awarding either legal or equitable relief against the state. *Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932, 2939, 92 L.Ed.2d 209 (1986). However, an exception to this rule first announced in *Ex Parte Young*,[5] enables a federal court to entertain a suit for prospective relief against a defendant state officer upon allegations that he violated federal law, based on the legal fiction that a state officer cannot then be acting pursuant to state authority. *Papasan*, 106 S.Ct. at 2939–40. Whether the Louisiana Board of Dentistry or Dr. Chustz is entitled to eleventh amendment immunity are distinct issues.

■ We consider first the dental board. The "State" for eleventh amendment purposes includes state agencies, *Mt. Healthy City School District Bd. of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), appeal after remand 670 F.2d 59 (6th Cir.1982), but not "political subdivisions" of the state. *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401–02, 99 S.Ct. 1171, 1178–79, 59 L.Ed.2d 401 (1979).

In *Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129, 131 (5th Cir.1986), this Court set forth six factors for determining

---

**4.** *See also Whiting v. Jackson State University*, 616 F.2d 116, 127 n. 8 (5th Cir.1980); *Charley's Taxi Radio Dispatch Corp. v. Sida of Hawaii, Inc.*, 810 F.2d 869, 873 (9th Cir.1987); *but see Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 515–16, 102 S.Ct. 2557, 2567–68, 73 L.Ed.2d 172 (1982).

**5.** 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

whether a particular entity is entitled to eleventh amendment immunity:

(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide problems; (5) whether the entity has authority to sue and be sued in its own name; and (6) whether the entity has the right to hold and use property.

Applying these factors the Court in *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987), held that the Louisiana Department of Health and Human Resources (DHHR) and Charity Hospital of Louisiana at New Orleans, which is a part of the DHHR, are entitled to eleventh amendment immunity.

 The Board of Dentistry is also part of the DHHR. La.Rev.Stat.Ann. § 37:753A (West Supp.1986). The Board consists of twelve members appointed by the Governor and is concerned with statewide issues, *i.e.*, the regulation of the practice of dentistry in Louisiana. La.Rev.Stat. Ann. §§ 37:753B, 37:760 (West Supp.1986). In addition, the Board receives its funding from the state and any judgment against the Board would be paid with state funds. *Darlak*, 814 F.2d at 1059. Although the Board has authority to sue and be sued, La.Rev.Stat.Ann. §§ 37:785, 37:786, 37:791 (West Supp.1986), the existence of the other factors demonstrates that the Board is the alter ego of the State of Louisiana. Because § 1983 does not negate a state's eleventh amendment immunity, *Pennhurst*, 465 U.S. at 99, 104 S.Ct. at 907; *Voisin's*, 799 F.2d at 186, and the Board is the alter ego of the State of Louisiana, which has not consented to suit,[6] *see Fireman's Fund Ins. Co. v. Dept. of Transp. and Development, State of Louisiana*, 792 F.2d 1373, 1375–76 (5th Cir.1986), relief is barred against the Board.

Neuwirth's claim for injunctive relief against Dr. Chustz is more problematic. The primary issue is whether the claim falls within the *Ex Parte Young* exception to immunity in light of recent decisions favoring its narrow construction[7]. In *Papasan*, the Supreme Court described *Young* as applying to situations "where the underlying authorization upon which the named (state) official acts is asserted to be illegal." 106 S.Ct. at 2940 (citing *Cory v. White*, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)). The Court further stated that Young

... does not foreclose an Eleventh Amendment challenge where the official actions are asserted to be illegal as a matter of *state law alone* (citation omitted). In such a case, federal supremacy is not implicated because the state official is acting contrary to *state law only*.

*Id.* (emphasis added).

Another way of articulating this point is that the exception "allows federal courts to hear suits against state officials if the suit seeks to force them to conform their conduct to federal law," but does not apply to "suits which would seek to have federal judges order state officials to conform their conduct to state law." *Rotunda, Nowak, & Young, Constitutional Law: Substance and Procedure*, Vol. 1 § 2:12 at 89 (1986); *see also Pennhurst*, 465 U.S. at 89, 104 S.Ct. at 900; *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), *rehearing denied* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 491 (1985).

Dr. Neuwirth's right to relief in federal court thus depends on whether his claim implicates a constitutional violation, as contrasted with a violation of state law alone. In cases like this, where our jurisdiction

---

**6.** The fact that the Board has appeared in this case and did not raise below an eleventh amendment defense can not be construed as a waiver. A state's waiver of its immunity must be express and unequivocal. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662; *Clark v. Barnard*, 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883).

**7.** *See, e.g., Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Chiz's Motel and Restaurant, Inc. v. Miss. State Tax Com'n*, 750 F.2d 1305, 1308 (5th Cir.1985); *Pennhurst*, 465 U.S. at 89, 104 S.Ct. at 900; *Papasan*, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209.

and appellant's right to relief on the merits are intertwining issues, it is our practice usually to discuss and resolve the issues jointly. "When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide it on the merits." *Eubanks v. McCotter*, 802 F.2d 790, 792–93 (5th Cir.1986). As will be seen, despite Dr. Neuwirth's valiant efforts to persuade us, we do not perceive his lawsuit as raising any issue other than an arguable violation of state law.

■ The due process clause of the fourteenth amendment protects a person from deprivation of life, liberty or property without due process of law. Whether "due process" has been accorded a plaintiff is not material unless he demonstrates that state action deprived him of a constitutionally protected interest. Dr. Neuwirth's claim founders on this first hurdle—he has not elevated his state law grievance to the deprivation of a property or liberty interest protected by the constitution.

It is settled that, "Although the underlying substantive interest is created by 'an independent source such as state law,' federal constitutional law determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). The applicable Louisiana statute provides that "[t]he board [of Dentistry] *may* issue a license without exam" on reciprocal terms. La.R.S. 37:768 (emphasis added). The Board admittedly refused ever to issue any reciprocal license without examination to a dentist qualified outside of Louisiana. Dr. Neuwirth contends that the statute gave

him an "expectation" of being admitted to practice on a reciprocal basis and that the Board's refusal to exercise the statutorily founded discretion arbitrarily and capriciously deprived him of "fair" treatment under the law. His constitutional "interests" thus purportedly rest upon the statute and upon a general right to be treated "fairly" by a state administrative agency.[8] We reject these claims.

■ Dr. Neuwirth's major complaint about the adverse district court ruling is that the trial court ignored La.R.S. 37:768 and the entitlement it confers on him to be considered for an examination-free reciprocal license. Our brief response is that the court did not ignore the statute, and the statute does not obviously confer such a right. As the district court observed, the statute provides that the Dentistry Board "may" grant reciprocal licenses to qualified dentists from out of state by waiving the exam requirements. Use of the word "may" as opposed to mandatory language as "shall" has been found to indicate a legislature's intention to bestow discretion on the state agency charged to apply the statute. *See Scales v. Mississippi State Parole Bd.*, 831 F.2d 565, 565 (5th Cir. 1987); *Board of Pardons v. Allen*, — U.S. —, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In *Scales*, this court, finding that a Mississippi parole statute created no constitutionally protected liberty interest, stated: "The distinction between whether a prisoner *shall* or *may* be given parole critically differentiates his expectation of release, and hence his rights under the due process clause of the fourteenth amendment." 831 F.2d at 566. Similar precatory language in this Louisiana statute necessarily leads to the conclusion that absolute discretion over Louisiana's reciprocity policy has been conferred on the Dentistry Board.[9] The stat-

---

8. Dr. Neuwirth acknowledges that he has no general, abstract constitutional interest in practicing dentistry in Louisiana without passing the examination.

9. The dissent suggests that our interpretation of "may" in R.S. 37:768 must be qualified by refer-

ence to 24 specific and, impliedly, exclusive grounds for nonissuance, suspension or revocation of a dental license, enumerated in R.S. 37:776. The latter provision, according to the dissent, "strongly suggests that the exercise of discretion to deny a license should be tailored to the particular application." We disagree. Two

ute gives rise to no constitutionally protected interests enforceable by Dr. Neuwirth.

This result harmonizes with *Leis v. Flynt,* 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed. 2d 717 (1979), in which the Supreme Court found no constitutionally protected right of an attorney to appear *pro hac vice* in a state in which he was not licensed to practice law. The Court responded that even if the petitioning attorneys had "reasonable expectations of professional service," these did not rise to the level of mutual, explicit understanding with the state necessary to create a constitutional entitlement, because the Ohio Supreme Court rules consigned the authority to permit *pro hac vice* appearances to the trial court's discretion. 439 U.S. at 443–44, 99 S.Ct. at 701.

Appellant embellishes upon his basic argument, however. He contends that the Board's decision never to grant reciprocal licenses without examinations, in the face of a statute requiring them to exercise discretion, is an arbitrary and irrational abuse of discretion that violates his right to be treated "fairly" by the state.

■ To the extent this argument depends on our finding a violation of state law, neither the purported violation nor the argument it supports is compelling. The issue of Louisiana law is whether in stating that the Dentistry Board "may" grant reciprocal licenses without an examination, and thus in conferring discretion on the Board to evaluate reciprocal license applications, the legislature also intended to say the Board may elect not to do so in every case. We have already indicated that the Board appears to have absolute discretion in these matters. Even on the dubious

assumption that the Board violated Louisiana law, that "is neither a necessary nor a sufficient condition for a finding of a due process violation." *Stern v. Tarrant County Hospital Dist.,* 778 F.2d 1052, 1059 (5th Cir.1985) (en banc), *cert. denied* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986). The appropriate standard is one of federal law.

In advocating a "fairness" standard, Dr. Neuwirth suggests that he is entitled to receive substantive due process, i.e., fairness of result, in connection with his application for an examination-free license. The contours of substantive due process are not starkly etched, to say the least. *See, e.g.,* discussion in *Brennan v. Stewart,* 834 F.2d 1248, 1248–49, (5th Cir. 1988). We can affirm, however, that Dr. Neuwirth's plea for a "fairness" standard is not within those contours for two reasons. First, the foregoing analysis demonstrated that he has no constitutionally protected interest in practicing dentistry in Louisiana without taking an examination. Such constitutionally protected interests are a prerequisite to asserting a substantive due process violation. *See, e.g., Regents of University of Michigan v. Ewing,* 474 U.S. 214, 223 and n. 8., 106 S.Ct. 507, 512 and n. 8, 88 L.Ed.2d 523; *Brennan v. Stewart,* 834 F.2d at 1257–58.

Second, even if he had such an interest, the Supreme Court has gauged the constitutional protection of "non-fundamental" rights by rationality of outcome, not fairness. If state action is so arbitrary and capricious as to be irrational, its infringement on a constitutionally protected interest may violate substantive due process rights. *See Regents of University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct.

---

far more significant differences in terminology outweigh the impact of R.S. 37:776 upon the granting of reciprocal licenses without examinations. First, La.R.S. 37:760 and 761 together provide for the award of dental licenses to applicants who pass an examination, and satisfy other criteria, *without* using the precatory "may" contained in the reciprocal license provision. This comparison "strongly suggests" that the legislature knew how to grant very broad discretion over reciprocal licenses while withholding such discretion by framing objective criteria for local applicants and those who pass an exam. Moreover, even if the criteria of

§ 776 must be imported into any reciprocal licensing scheme the Board might establish, their existence does not suggest that the Board lacks discretion to decline all reciprocal licensing without examination, as the "may" in § 768 indicates. Second, the dissent overlooks the emphasis of the Supreme Court in *Board of Pardons v. Allen,* —— U.S. ——, 107 S.Ct. 2415, upon use of the word "shall" for purposes of creating a constitutionally-protected liberty interest. —— U.S. ——, 107 S.Ct. 2418, 2419, 2420, 96 L.Ed.2d 303. "Shall" and "may" are simply not for present purposes, as the dissent would imply, interchangeable or synonymous depending upon syntax.

507, 88 L.Ed.2d 523 (state university's dismissal of student was not arbitrary);[10] *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978) (regulation of retail gasoline market found rational). We part company here with the gravamen of Dr. Neuwirth's attack on the Dentistry Board, because we find that the Board's denial of an examination-free license to Dr. Neuwirth was not irrational. As the district court observed, it is ironic that Dr. Neuwirth should characterize a consistent policy of requiring all applicants to take a professional dentistry examination as arbitrary and capricious.

*Schware v. Board of Bar Examiners of the State of New Mexico,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), although cited in Dr. Neuwirth's behalf, does not support his proffered "fairness" rule. In *Schware,* the appellant had been denied the right to take the New Mexico bar examination largely because he had been a member of the Communist party some years earlier and for this reason was said not to fulfill New Mexico's character requirement for prospective attorneys. Abundant, uncontradicted evidence of Schware's law-abiding conduct, honorable military record and good character for over ten years immediately preceding his application appeared in the record. The Supreme Court held that New Mexico did not act rationally in excluding Schware from the bar exam and

thus denied Schware due process. The Court emphasized, however, that a state can require high standards of qualification for the practice of law so long as such standards have a rational connection to an appellant's fitness and are not invidiously discriminatory. Not only does *Schware* comport with a rationality standard of review of the state's action, but it was also a case in which the effect of New Mexico's action was to prevent Schware from practicing law in New Mexico. The Dentistry Board, by contrast, has imposed no disabling restriction on Dr. Neuwirth, who, the district court found, actively practices dentistry under a restricted license. The Dentistry Board only asks and requires him to pass a licensing examination in order to obtain a full license.[11]

We do not demean in the slightest Dr. Neuwirth's impressive professional credentials. If we were on the Dentistry Board, and were given discretion to decide which practitioners licensed out-of-state should be admitted to practice in Louisiana without passing the professional examination, Dr. Neuwirth would probably be among our first candidates for such a waiver. But the point of our decision is that we are not on the Dentistry Board, nor have we been selected by the governmental authorities of Louisiana to determine who should practice dentistry.[12] To set up a firm policy of

---

**10.** The majority of the Court in *Ewing* did not specifically hold that a student has a constitutionally protected right to remain at a state university, but it *assumed* the existence of such a right and proceeded to decide that the state had not arbitrarily withdrawn it from Ewing. 474 U.S. at 214, 106 S.Ct. at 512; *see also* Justice Powell's concurrence, suggesting that no substantive due process rights were implicated in Ewing's case. 474 U.S. at 228–29, 106 S.Ct. at 515–16. Our Court has noted the existence of a split among the circuits over the extent of due process protections for property rights after *Ewing. Schaper v. City of Huntsville,* 813 F.2d 709, 717 n. 8 (5th Cir.1987). *Schaper* held that a substantive due process right exists in continued state employment but does not affect pretermination procedure. *Schaper* does not govern a case like this one, which deals with a prospect of a professional license in which, as we have found, there was no constitutionally enforceable right.

**11.** Dr. Neuwirth does not, nor could he deny that Louisiana has a vital interest in assuring the qualifications of its dentists. *See, e.g., Allen v. Louisiana State Board of Dentistry,* 835 F.2d 100, 102–103 (5th Cir.1988).

**12.** The dissent's argument rests on two propositions: that Dr. Neuwirth had a "legitimate claim of entitlement" to a reciprocal license under La.R.S. 37:768, without having to take an exam; and that he was entitled to "individualized" procedural due process from the Board when it reviewed his application. If this were the sum of his constitutional case, Dr. Neuwirth would be entitled to no more than another hearing before the Board, because that is the remedy for due process violations. In asserting that Dr. Neuwirth may be entitled to more relief—i.e. to the issuance of a license—the dissent seems to confuse substantive due process with procedural due process and would impose this court's result on the state in addition to this court's procedural requirements. Such an application

requiring all would-be Louisiana dentists to pass an examination, irrespective of professional background, does not strike us as arbitrary, capricious or irrational. This is particularly so in the absence of any discriminatory motive. It is not our function to be the court of last resort for all those dissatisfied with the outcome of state agency action. Dr. Neuwirth's case, although sympathetic, does not represent that affront to common notions of decency, *see, e.g., Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), or infringe one of the "fundamental interests" that previously have been viewed as implicitly protected by the constitution. *Regents of University of Michigan v. Ewing,* 474 U.S. at 229, 230, 106 S.Ct. at 516 (Powell, J., concurring).

The judgment of the district court is *AFFIRMED.*

WISDOM, Circuit Judge, dissenting:

Dr. P. Sidney Neuwirth is a qualified and experienced dentist who practised in the state of Illinois from 1938 until 1981 when he accepted a position to serve as an Assistant Clinical Professor at the Louisiana State University School of Dentistry. The Louisiana State Board of Dentistry has denied his requests for a license based on a reciprocity statute.[1] Unfortunately for Dr. Neuwirth, his pleadings are flawed—at least at this point.

As this case has been pleaded, I agree with the majority that the eleventh amendment determines the outcome. Under this court's decision in *Darlak v. Bobear,*[2] the Louisiana State Board of Dentistry is an alter ego of the State of Louisiana and is therefore immune from suit. Because of Dr. Neuwirth's failure to name all the members of the Board as defendants, his request for relief does not fit within the reach of *Ex parte Young.*[3]

The majority, however, ventures far beyond the principles necessary to decide this appeal. The declaratory judgment and injunction Dr. Neuwirth requests are *not* relief necessarily barred by the eleventh amendment.[4] Only a pleading defect puts Dr. Neuwirth's request for an injunction outside *Young:* Dr. Neuwirth asks for an order that the Board grant him a license, but names only Dr. Chustz defendant in his official capacity as Board president. Dr. Neuwirth should have joined the other members of the Board. By himself, Dr. Chustz is powerless to grant Dr. Neuwirth's application for a license.[5] The appropriate response to Dr. Neuwirth's error is dismissal without prejudice.[6]

The merits of Dr. Neuwirth's claim need not have been addressed.[7] Because the

---

of substantive due process ignores the rationality test for judging the constitutionality of most state actions. More fundamentally, it flies in the face of our *en banc* decision in *Stern v. Tarrant County, supra,* holding that fourteenth amendment violations are decided by federal standards rather than by a simplistic tautology with any state law violation.

1. La.Rev.Stat.Ann. § 37:768 (West 1974).

2. 814 F.2d 1055 (5th Cir.1987).

3. I also agree that the repeal of La. 37:768 does not moot this case. *See* majority opinion note 3 above.

4. *Gay Student Services v. Texas A & M University,* 612 F.2d 160, 164 n. 3, 165 (5th Cir.) *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). As the Supreme Court said in *Papasan,*

> Relief that in essence serves to compensate a party injured in the past by an action of a state official ... illegal under federal law is barred even when the state official is the

named defendant. ... On the other hand, *relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury.*
478 U.S. at 278, 106 S.Ct. at 2940, 92 L.Ed.2d at 227 (emphasis added). *See also* Wright, Miller, and Cooper, Federal Practice and Procedure § 3524 at 196–96 & n. 141 (1984 & Supp.1987).

5. *See* La.Rev.Stat.Ann. § 37:754(A) (West 1974).

6. *Voisin's Oyster House,* 799 F.2d at 188–89.

7. Our inability to grant the injunctive relief Dr. Neuwirth requests does not, of course, preclude declaratory relief. Fed.R.Civ.P. 57. *See* Wright, Miller, and Cooper § 2758 at 620–21 & nn. 3–4. But because the harm Dr. Neuwirth alleges he suffered is effectively remedied only by an injunction ordering the Board to grant him a license, this court reasonably could have refused declaratory relief until it could also issue an injunction. *See id.* § 2758 at 621–23 & n. 6, 627–30 & nn. 9–10.

majority has reached the merits, however, it is appropriate for me to express my dissent from its view of them.

## I.

It is important to emphasize that the majority does not hold that *Papasan* and *Pennhurst* bar a fourteenth amendment due process claim merely because that claim is based upon a property interest defined by state law. The Supreme Court has long recognized that determining what constitutes "property" is a matter of measuring the interest defined by state law against a fourteenth amendment yardstick. In this sense, *all* due process claims—including the one in *Young*—are premised upon a violation of state law. Reading *Papasan* and *Pennhurst* to bar them on this basis would eviscerate the due process clause.

The message *Papasan* and *Pennhurst* send is that the eleventh amendment ensures that the fourteenth does not go so far as to open the federal courts as a forum for the remedy of *every* state law wrong: "federal supremacy is not implicated [when] the state official is acting contrary to state law only".[8] If not restrained in some way, federal power under the fourteenth amendment could raise any state law wrong to the level of a due process violation. All state laws set out rules that each citizen has a right to expect will be

followed. Were this expectation generally recognized as "property" or "liberty" protected by the fourteenth amendment, each citizen would have a federal cause of action under *Young* whenever a state official disappointed these state law expectations without due process. This would go too far, as *Pennhurst* and *Papasan* sensibly recognize.[9]

But the threshold inquiry in each due process case remains whether the state law interest at stake rises to the level of constitutionally-protected "property" or "liberty". In *Roth, Perry v. Sindermann*,[10] and their progeny, the Court fleshed out the substance of this inquiry.[11] The innovation of *Pennhurst*, followed in *Papasan*, was to restate these fourteenth amendment principles in eleventh amendment terms: if the plaintiff has a "property" or "liberty" interest, *Young* affords a federal cause of action under the fourteenth amendment; if not, the cause of action is under state law and suit may be barred in the federal courts by the eleventh amendment.[12]

## II.

Whether or not this innovation puts us on the right track,[13] it will take us nowhere without an understanding of what constitutes "property" and "liberty" protected by the due process clause. *Pennhurst* and *Papasan* provide little guidance on this point.[14] The majority's treatment of the

**8.** *Papasan*, 478 U.S. at 277, 106 S.Ct. at 2940, 92 L.Ed.2d at 226.

**9.** *See* Dwyer, Pendent Jurisdiction and the Eleventh Amendment, 75 Calif.L.Rev. 129, 141–42 (1987).

**10.** 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

**11.** *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979); *Board of Pardons v. Allen,* 482 U.S. ——, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987).

**12.** Whether the *Pennhurst* limits on federal jurisdiction apply also depends on the nature of

the relief requested. *See Papasan*, 478 U.S. at 277, 106 S.Ct. at 2940, 92 L.Ed.2d at 226–27, quoted at note 25 below. *See also* Dwyer, 75 Calif.L.Rev. at 145–51.

**13.** For a thoughtful argument that it does not, see Shapiro, Wrong Turns: The Eleventh Amendment and the *Pennhurst* Case, 98 Harv.L. Rev. 61 (1984).

**14.** *Papasan* does not address the issue. It held that even if Mississippi's school land grants created a binding trust with the state as trustee, and even if this trust was constitutionally-protected "property", the plaintiffs' request that the governor and other state officials be ordered to pay the original corpus and accumulated earnings from the state treasury amounted to a "retroactive award of monetary relief" barred by *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *Papasan,* 478 U.S. at 279–81, 106 S.Ct. at 2941–42, 92 L.Ed.2d at 228–29.

subject, although correct as far as it goes, makes short shrift of the concept of constitutionally-protected "property". This court's recent opinion in *Mahone v. Addicks Utility District* discusses the concept more fully:

In *Roth*, the Supreme Court explained that the definition of "property interest," when it arises in the context of the fourteenth amendment, is not limited by traditional concepts of ownership. Indeed, "the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." ... Consequently, besides protecting individual interests in real and personal property, the fourteenth amendment's due process safeguards also extend to the "interests that a person has already acquired in specific benefits." ... The questions, therefore are when and how a person acquires an "interest in specific benefits" which will trigger the due process clause. The Supreme Court explained "when" in *Roth:*

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

In *Penhurst,* two considerations relevant to a definition of "property" or "liberty" underlie the Court's holding that the eleventh amendment barred relief for the undisputed failure by the state administrators in charge of the Penhurst State School and Hospital to provide the school's residents "minimally adequate habilitation". 465 U.S. at 93, 104 S.Ct. at 904. First, the Pennsylvania Mental Health and Mental Retardation Act gave the administrators so much discretion that their actions—although later found to be in violation of the Act—could not be called "ultra vires". *Id.* at 101 & n. 11, 109–111, 104 S.Ct. at 909 & n. 11, 912–13. Second, the officials acted in a "good faith" belief that they complied with the Act. *Id.* at 107, 104 S.Ct. at

... In a nutshell, therefore, when a person has a legitimate claim of entitlement to a benefit, he has a protected property interest sufficient to entitle him to due process. How these "legitimate claims of entitlement" arise is equally clear. As the Supreme Court explained, "[p]roperty interests are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." [15]

With these principles in mind, I do not find it so clear as the majority that Dr. Neuwirth has no "legitimate claim of entitlement" to a reciprocal license. I agree with the majority that the place to begin the *Roth* inquiry is language of the statute establishing the interest. But the majority's inquiry begins and ends with construing the word "may" as conferring absolute discretion in the Board never to grant a license to a qualified dentist moving to Louisiana from another state. This view of the interest Louisiana law gives Dr. Neuwirth strikes me as myopic.

Constitutionally-protected property interests do not hang on a single word. Broad administrative discretion in the award of a benefit, indicated by precatory language in the relevant statute, does not give rise to constitutionally-protected "property". [16] Nonetheless, the appearance of "may" in R.S. 37:768 does not necessarily render Dr. Neuwirth's interest in a reciprocal license "a mere unilateral expectation". To say that the Board has "discretion" in the granting of reciprocal licenses begs the question whether Dr. Neuwirth has a con-

911. Both considerations speak indirectly to whether the plaintiffs had a "legitimate claim of entitlement" to the particular treatment they sought: both the Court, reviewing state law after the fact, and health care administrators, acting in good faith before the fact, found the claim open to dispute.

15. 836 F.2d 921, 929–30 (5th Cir. 1988) (citations to *Roth*, 408 U.S. at 571–72, 576–77, 92 S.Ct. at 2706, 2708–09, omitted).

16. This was, for example, one basis of this court's rejection of the due process claim in *Mahone.* at 931.

stitutionally-protected interest. All agencies exercise discretion when implementing legislative commands. To determine the extent of the interest R.S. 37:768 creates, this court should look further, to the remainder of the licensing statute as well as the broader context of how the statute is commonly understood.

Recently, in *Board of Pardons v. Allen,* the Supreme Court again explained the proper method of inquiry:

The Court ... held in *Greenholtz* that the presence of general or broad release criteria—delegating significant discretion to the decisionmaker—did not deprive the prisoner of the liberty interest in parole release created by the Nebraska statute. In essence, the Court made a distinction between two entirely distinct uses of the term discretion. In one sense of the word, an official has discretion when he or she "is simply not bound by standards set by the authority in question." R. Dworkin, Taking Rights Seriously 32 (1977). In this sense, officials who have been told to parole whomever they wish have discretion. In *Greenholtz,* the Court determined that a scheme awarding officials this type of discretion does not create a liberty interest in parole release. But the term discretion may instead signify that "an official must use

judgment in applying the standards set him [or her] by authority"; in other words, an official has discretion when the standards set by a statutory or regulatory scheme "cannot be applied mechanically." Dworkin, supra, at 31, 32 .... The Court determined in *Greenholtz* that the presence of official discretion in this sense is not incompatible with the existence of a liberty interest in parole release is *required* after the Board determines (in its broad discretion) that the necessary prerequisites exist.[17]

Here, the word "may" in R.S. 37:768 gives the Board discretion to grant reciprocal licenses to applicants meeting certain, specific criteria. This does not, however, give the Board *"absolute* discretion" to refuse all such applicants as the majority contends.

Rather, R.S. 37:776, passed at the same time and as part of the same licensing act as R.S. 37:768, sets out in great detail "causes for *nonissuance,* suspension, revocation, or imposition of restrictions of a dental license".[18] This list of twenty-four grounds for refusing an application for a dental license clearly limits the Board's discretion and strongly suggests that the exercise of discretion to deny a license should be tailored to the particular application.[19]

---

**17.** 482 U.S. at ——, 107 S.Ct. at 2419, 96 L.Ed.2d at 311 (original emphasis).

**18.** La.Rev.Stat.Ann. § 37:776 (West 1974 & Supp.1987) (emphasis added).

**19.** I reproduce them in the margin:

The board may refuse to issue ... any dental license under this Chapter for any of the following reasons:

(1) Affliction with a contagious ... disease.
(2) Conviction of a crime ... .
(3) Fraud, deceit, or perjury in obtaining any diploma, license, or permit ....
(4) Providing false testimony before the board or in any judicial proceeding.
(5) Habitual indulgence in the use of drugs, narcotics, or intoxicating liquors.
(6) Prescribing ... legally-controlled substances in other than a legal ... manner.
(7) Professional or dental incompetency.
(8) Continuing or recurring dental practice which fails to satisfy the prevailing acceptable standards of dental practice in this state.
(9) Division of fees ... for dental services with any person for bringing or referring a

patient without the knowledge of the patient ... .

(10) Employing ... or abetting a person not licensed ... as a dentist to engage in the practice of dentistry ... .
(11) Employing unlicensed persons to perform work which under this Chapter can only be done by persons licensed to practice dental hygiene in this state.
(12) Making any misrepresentations ... to influence ... dental patronage.
(13) Professional connection or association with ... any person holding himself out in any manner contrary to this Chapter.
(14) Practicing under any name other than that which appears on the license ... .
(15) Unprofessional conduct as defined in R.S. 37:775.
(16) Any conduct intended to deceive or defraud the public.
(17) Conduct ... which disqualifies the licensee to practice dentistry with safety to the public ..., including but not limited to deterioration through the aging process or loss of motor skills.

R.S. 37:776 seems sufficiently specific and objective to constitute a requirement that, unless Dr. Neuwirth can be refused for one of the reasons listed, he be granted a license under R.S. 37:768.[20]

The reciprocal nature of the interest defined by R.S. 37:768 adds a distinctive twist to Dr. Neuwirth's claim of entitlement. It presents an opportunity to verify objectively the plain meaning of R.S. 37:768 and 37:776. If, on the strength of Louisiana's licensing laws, Illinois and other states have been granting reciprocal licenses to dentists from Louisiana, this would confirm that Dr. Neuwirth's expectations are a widely-shared and reasonable basis for reliance. The Supreme Court made clear in *Roth* that reliance is an important indicator of constitutionally-protected property.[21] Reasonable reliance on Louisiana law by Illinois and other states would strengthen the entitlement of dentists from those states to similar treatment in Louisiana.

Unfortunately, the record does not reveal whether other states honored Louisiana's offer of reciprocal licenses. The question, however, merits serious inquiry by the trial court. If the Louisiana legislature intended to offer a deal to other states and their dentists, and if that offer was accepted, what is at stake in this case is more than a "mere unilateral expectation" or "an abstract need or desire". It is much more than an "interest in practicing dentistry in Louisiana without passing an examination."[22] What is at stake—what Dr. Neuwirth moved to Louisiana expecting to get and what Illinois and other states may have licensed Louisiana dentists expecting to receive—is a legitimate claim of entitlement to a reciprocal license.[23]

(18) The refusal of ... another state to issue or renew a license ... to practice dentistry ... .

(19) Employing solicitors ... for the purpose of securing patients, other than advertising permitted by law.

(20) Refusing to submit to the examinations and inquiries of medical physicians ... designated by the board ... to inquire into the dentist's physical or mental fitness ... .

(21) Making ... false or deceptive claims to any patient, insurance company, ... or governmental authority for the purpose of obtaining monetary compensation for services rendered.

(22) Immoral conduct in exercising the privileges provided for by license or permit issued under this Chapter.

(23) Interdiction or committment by due process of law.

(24) Violation of any rule or regulation of the board or any provision of this Chapter. La.Rev.Stat.Ann. § 37:776(A) (West Supp.1987). That the Board "may" refuse to issue a license to an otherwise qualified applicant for any of these twenty-four reasons, implies that it *may not* refuse for any other reason.

**20.** *See Allen,* 482 U.S. at ——, 107 S.Ct. at 2419–22, 96 L.Ed.2d at 311–14 (discussing language that created presumption of entitlement). *Cf. Irving v. Thigpen,* 732 F.2d 1215, 1216–17 (5th Cir.1984) (subjective conditions create no presumption of entitlement); *Williams v. Briscoe,* 641 F.2d 274, 277 (5th Cir.1981) (same). In *Tomanio v. Board of Regents,* for example, the Second Circuit found the New York's statutory waiver of the "education, experience, and examination requirements for a [chiropractor's] professional license ... provided the Board of Regents shall be satisfied that the requirements ... have been substantially met" created a constitutionally-protected property interest. 603 F.2d 255, 257 (2d Cir.1979) *rev'd on other grounds,* 446 U.S. 478, 100 S.Ct. 179, 64 L.Ed.2d 440 (1980). It did so because (1) the statute spelled out the "education, experience, and examination" requirements in detail and (2) "substantial" compliance with the requirements had a "plain meaning". 603 F.2d at 258.

I also note here that I cannot agree with the majority that its conclusion "harmonizes" with *Leis v. Flynt.* The Supreme Court's holding in *Leis* is premised upon a finding that Ohio law gives trial judges unfettered discretion to grant or deny an out-of-state attorney the right to appear pro hac vice in their court. 439 U.S. at 442–43, 99 S.Ct. at 701. In taking this view of the Ohio law, the *Leis* Court had the benefit of Ohio decisions construing the law in question. *Id.* at 453–56, 99 S.Ct. at 706–08 (Stevens, J., dissenting). Here, we have not the benefit of a Louisiana court decision construing R.S. 37:768.

**21.** 408 U.S. at 577, 92 S.Ct. at 2709, quoted at note 11 above.

**22.** Majority opinion note 8 above. Dr. Neuwirth asks here only for what he could reasonably expect from the plain language of R.S. 37:768: permission to practice in Louisiana based on his Illinois license.

**23.** Viewed from another perspective, what is at stake is the duty of state officials to carry out the plain meaning of the state's laws. This duty is rooted in the substantive components of the due process requirement. *See Daniels v. Williams,* 474 U.S. 327, 337–39, 106 S.Ct. 662, 677–79, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring).

## III.

If Dr. Neuwirth has a legitimate claim of entitlement to a reciprocal license, there can be no doubt that he did not receive due process in his appearances before the Board. Due process entitles Dr. Neuwirth to an *individualized* decision on his application for a reciprocal license. As the Second Circuit said in *Tomanio v. Board of Regents:*

> Where, as here, such broad discretionary power is granted to admit or deny entrance or continuance in a learned profession, it "must be construed to mean the exercise of a discretion ... after fair investigation, with such notice, hearing and opportunity to answer for the applicant as would constitute due process." *Goldsmith v. Board of Tax Appeals*, 270 U.S. 117, 123 [46 S.Ct. 215, 217, 70 L.Ed. 494] (per Ch. Justice Taft 1926).
>
> The adjudicative fact to be determined in considering whether to grant a waiver is not whether [the plaintiff] may practice her profession in New York, as she can do in Maine and New Hampshire, as a matter of grace from her sovereign or at the whim of the Regents. Rather, it is whether [she complies with the statutory requirements for waiver]. Of course, the state legislature need not have provided for any waiver of the examination. But once it did so, denial of the waiver implicates procedural due process rights. An adjudicative fact of such significance to [the plaintiff's] interests cannot, in logic or constitutionally, be resolved without a hearing before an impartial fact finder, followed by a statement of reasons in the event of denial.[24]

In this case, the Board's policy *never* to grant reciprocal licenses rendered any hearing Dr. Neuwirth received a sham: the Board had determined to rule against him whatever his qualifications and regardless of the requirements of R.S. 37:768 and 37:776. A Board committed to denying *all* such applications for reciprocal licenses cannot be "an impartial fact-finder". A statement that the Board denies *all* such

applications is not a legitimate "reason" for denial under R.S. 37:768 and 37:776. Thus, in no sense did Dr. Neuwirth receive a genuinely individualized decision on his application. He received three opportunities to waste his time in futile efforts to convince the Board not to nullify R.S. 37:768. That is not due process.

## IV.

But for Dr. Neuwirth's pleading error, this case states a due process violation and falls squarely within the parameters of *Ex parte Young*. As the Court in *Papasan* described it,

> ... *Young* has been focused on cases in which *a violation of federal law by a state official is ongoing* as opposed to cases in which federal law has been violated at one time or over a period of time in the past, as well as on cases in which *the relief against the state official directly ends the violation of federal law* as opposed to cases in which that relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation.[25]

Dr. Neuwirth's contentions, undisputed by the Board, meet both of these requirements. First, they state an ongoing denial of federal due process. According to an announced policy, the Board not only denied Dr. Neuwirth a reciprocal license, but plans to deny all such applications. Second, this ongoing wrong would be ended directly by an order to the members of the Board to (1) determine whether Dr. Neuwirth—or any other applicant for a reciprocal license before R.S. 37:768 was repealed—meets the requirements of R.S. 37:768 and 37:776 and (2) if so, to issue the requested license.

Had Dr. Neuwirth joined the appropriate defendants, this court should have vacated the district court's summary judgment and remanded the cause for a trial on whether Dr. Neuwirth's expectation of a license rises to a legitimate claim of entitlement. As

---

24. 603 F.2d at 258–59.

25. 478 U.S. at 277–78, 106 S.Ct. at 2940, 92 L.Ed. 2d at 226–27 (emphasis added).

566

he did not, it was necessary for this court only to vacate the judgment of the district court and dismiss Dr. Neuwirth's complaint without prejudice to his filing a new or amended complaint based on the same cause of action. Instead, the majority goes out of its way in disservice to both a qualified dentist and the law of due process.