Donald PUGH; Percy Gusta; Priscilla Gusta, Plaintiffs–Appellants

v.

Sheriff Mike BYRD, In his Official Capacity as County Sheriff for Jackson County, Mississippi; Jackson County, a political subdivision of the State of Mississippi, Defendants–Appellees.

No. 13–60852
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 3, 2014.

William Stacy Kellum, III, Esq., Kellum Law Firm, P.C., Jackson, MS, for Plaintiffs–Appellants.

Gary S. Evans, Office of the Board Attorney, Pascagoula, MS, for Defendants–Appellees.

Before HIGGINBOTHAM, DENNIS, and GRAVES, Circuit Judges.

PER CURIAM: *

Defendants–Appellees—Sheriff Mike Byrd and Jackson County (collectively, "the Defendants")—moved for summary judgment on Donald Pugh, Percy Gusta, and Priscilla Gusta's (collectively, "the Plaintiffs") due process, equal protection, and state-law claims. The district court granted the Defendants' motion, and the Plaintiffs have now appealed. For the reasons that follow, we AFFIRM.

## BACKGROUND

In Jackson County, Mississippi ("the County"), bail agents that have been approved to write bail bonds are maintained and displayed on a list ("the List"). The Plaintiffs are bail agents that issue bail bonds through Pugh Bonding Company. They allege that the Gustas were added to the List in 2008 and that Pugh was added in 2010. After Sheriff Byrd removed the Plaintiffs from the List in February 2012, the Plaintiffs filed their complaint against the Defendants in October 2012.

Before they are added to the List, bail agents must first be approved by satisfying certain criteria set forth in documents provided to the agents, such as the Official Agreement for Bonding Companies and Bonding Company Rules and Regulations. Once approved, bail agents must follow certain "directives" issued by Sheriff Byrd, such as not being disruptive towards employees, arrestees, or other bail agents in the Adult Detention Center ("ADC"). Along with these documents and directives, an additional rule requires the bail agents to charge arrestees a minimum

---

bond premium of ten percent of the bond. Possessing the sole authority to remove bail agents from the List, Sheriff Byrd relies on the advice of ADC employees to determine whether a bail agent should be removed.

In early 2012, Sheriff Byrd received multiple complaints from both ADC employees and other bail agents that the Gustas were violating ADC rules, allegedly undercutting other bail agents by not adhering to the ten-percent bond-premium rule and being disruptive towards other bail agents. Along with these complaints, Sheriff Byrd was told that the Gustas had lost their bail agent's licenses while working for another bail bonding company. With this information before him, Sheriff Byrd decided to remove the Plaintiffs from the List.

Donald Pugh claimed that Sheriff Byrd gave no explanation for the Plaintiffs' removal from the List. Sheriff Byrd also did not respond to a letter, dated March 24, 2012, that requested an explanation for the removal. The Plaintiffs also alleged that, after reaching the County's undersheriff by telephone, they were informed that the County was not accepting any more bail agents on the List for the time being.

Later that year, the Plaintiffs filed their complaint, claiming that Sheriff Byrd, motivated by race, removed them from the List without prior notice or a hearing, in violation of their rights to due process and equal protection.[1] In addition to these constitutional claims, the Plaintiffs also alleged that Sheriff Byrd and the County

tortiously interfered with the Plaintiffs' business relations, in violation of Mississippi law. The Plaintiffs sought a declaration that the Defendants' removal of the Plaintiffs from the List was in violation of the federal constitution and Mississippi law, an injunction prohibiting the Defendants from refusing to allow the Plaintiffs to underwrite or solicit bail bonds in Jackson County, and an award of attorneys' fees, costs, and expenses related to the lawsuit.[2]

The Defendants moved for summary judgment, arguing that both federal and Mississippi courts have determined that the writing of bail bonds does not give rise to a property interest protected under the Fourteenth Amendment. The Defendants also contended that the Plaintiffs lacked evidentiary support for their equal protection claim and offered evidence that six out of the seventeen currently authorized bonding companies are owned by African–Americans. Lastly, the Defendants claimed that Mississippi tort law precludes intentional tort claims against municipal entities.

In response to the Defendants' motion for summary judgment, the Plaintiffs asserted that the Plaintiffs and the Defendants formed a contract to write bonds in the County and that, under Mississippi law, this contract created a protected property interest. The Plaintiffs also argued that Sheriff Byrd, a white male, relied on allegedly false accusations made by white bail agents as a pretextual motivation for removing the Plaintiffs from the List. Furthermore, the Plaintiffs alleged that Sheriff Byrd removed the Plaintiffs

---

**1.** The Plaintiffs also claimed that Sheriff Byrd's actions abridged their privileges or immunities as citizens of the United States, as guaranteed by the Fourteenth Amendment to the United States Constitution. Because the Plaintiffs have not raised their privileges-or-immunities argument on appeal, we do not discuss it further.

**2.** Because we affirm the district court's conclusion that the Defendants are entitled to summary judgment, the Plaintiffs' claim for attorney fees fails as a matter of law. *See* 42 U.S.C. § 1988(b) (2012) ("[T]he court[ ] ... may allow the *prevailing party* [ ] ... a reasonable attorney's fee" in an action to enforce 42 U.S.C. § 1983) (emphasis added).

from the list for the same bond-payment practices that other white bondsmen utilized, evincing disparate treatment and a discriminatory intent on the part of Sheriff Byrd. The Plaintiffs reasserted their claim that the Defendants tortiously interfered with the Plaintiffs' business relations without addressing any of the Defendants' arguments.

## STANDARD OF REVIEW

"We review de novo a district court's award of summary judgment, applying the same standard as the district court." *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.,* 592 F.3d 687, 690 (5th Cir.2010). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 417 (5th Cir. 2008). When moving for summary judgment, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party does so, the burden shifts to the non-moving party to "set out the specific facts in the record showing that a genuine issue exists." *Kelley v. Price–Macemon, Inc.,* 992 F.2d 1408, 1413 (5th Cir.1993).

## DISCUSSION

### I. Due Process Claim

### A. Property Interest

■ The Plaintiffs contend that when Sheriff Byrd removed them from the List, they were deprived, without notice or hearing, of a constitutionally protected property interest. The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "To bring a procedural due process claim ..., a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest." *Baldwin v. Daniels,* 250 F.3d 943, 946 (5th Cir.2001). The Plaintiffs' action relies on the notion that the ability to write bail bonds is a constitutionally protectable property interest. However, both federal and Mississippi law provide that, because the Mississippi bail-bond statutes give discretion to an authorizing officer, bond writing is not a property interest protected under the Fourteenth Amendment. Therefore, the Plaintiffs' procedural due process claim cannot succeed.

The relevant Mississippi bail-bond statute provides that "[the sheriff] *may* take bonds, with good and sufficient sureties, of any person whom he may arrest with or without a warrant for any felony that is bailable as a matter of law." MISS.CODE ANN. § 19–25–67 (emphasis added); *see also id.* § 21–23–8. Both federal and Mississippi courts have held that the inclusion of the word "may" in the statute renders it discretionary. *See Baldwin,* 250 F.3d at 946 ("Mississippi law expressly leaves the approval of tendered bonds to the discretion of the responsible officer." (citing MISS.CODE ANN. § 21–23–8)); *Tunica Cnty. v. Hampton Co. Nat. Sur., L.L.C.,* 27 So.3d 1128, 1134 (Miss.2009) ("We find that this language confers limited discretion to the sheriff, as he *may* take bonds." (citing MISS.CODE ANN. § 19–25–67)); *see also Neuwirth v. La. State Bd. of Dentistry,*

845 F.2d 553, 557 (5th Cir.1988) ("Use of the word 'may' as opposed to mandatory language such as 'shall' has been found to indicate a legislature's intention to bestow discretion on the state agency charged to apply the statute."). "Discretionary statutes do not give rise to constitutionally protectable interests." *Baldwin,* 250 F.3d at 946 (citing *Neuwirth,* 845 F.2d at 557). Because authorizing officers, through the Mississippi bail-bond statute, are granted discretion in deciding whether to allow an agent to write bail bonds, Mississippi law "gives rise to no constitutionally protectable interests enforceable by [the Plaintiffs]." *Neuwirth,* 845 F.2d at 557.

■ Nevertheless, the Plaintiffs allege that the Plaintiffs and the Defendants formed an implied contractual agreement to write bonds in the County, thus giving rise to a constitutionally protected property interest in writing bonds. The Plaintiffs rely on *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to support their argument. In that case, the Supreme Court concluded that a professor's " 'property' interest in employment at [a university] was created and defined by the terms of his appointment." *Id.* at 578, 92 S.Ct. 2701. However, in *Roth,* the professor's property interest was circumscribed by the terms of his appointment, which failed to "provide for contract renewal absent 'sufficient cause' " and "made no provision for renewal whatsoever." *Id.* Accordingly, the appointment "secured absolutely no interest in re-employment for the next year." *Id.* The *Roth* Court further explained that for a constitutionally protected property interest to exist, a person "must have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. In this case, the Plaintiffs have

failed to offer any evidence that they had a contract with the Defendants to write bail bonds in the County. And to the extent that the Plaintiffs seek to rely on either the Official Agreement for Bonding Companies or the Bonding Company Rules and Regulations, which set forth the criteria bail agents must satisfy in order to appear on the List, there is no evidence that either document limits the discretion Mississippi law affords Sheriff Byrd. Accordingly, the Plaintiffs have failed to demonstrate a genuine issue of material fact with respect to whether they have a constitutionally protected property interest.

### B. Liberty Interest

■ The Plaintiffs also argue that they have a liberty interest in their reputation and choice of occupation that was violated when Sheriff Byrd allegedly falsely accused the Plaintiffs of writing bonds without a license. Sheriff Byrd, however, did not accuse the Plaintiffs of writing bonds without a license. Rather, as his deposition testimony reveals, he explained that others had told him that the Plaintiffs had lost their license and that he factored this into his decision to remove the Plaintiffs from the List. The Plaintiffs have failed to identify any evidence in the record that Sheriff Byrd accused the Plaintiffs of writing bonds without a license or, as they allege, disseminated this accusation to anyone. Although the fact of the Plaintiffs' removal from the List may have been publicized, the Plaintiffs have failed to point to any record evidence that the reasons for the removal were also publicized. Accordingly, the Plaintiffs have also failed to demonstrate a genuine issue of material fact with respect to whether they have a constitutionally protected liberty interest.[3]

**3.** For the first time on appeal, the Plaintiffs assert that they have a liberty interest that was violated when Sheriff Byrd falsely accused them of violating section 83–39–25 of the Mississippi Code, which requires bond agents to charge a ten-percent premium on all

## II. Equal Protection Claim

■ To state a claim for an equal protection violation, the "plaintiff must either allege that (a) a state actor intentionally discriminated against [him] because of membership in a protected class or (b) he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Gibson v. Tex. Dep't of Ins.-Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir.2012) (alteration in original) (citation omitted) (internal quotation marks omitted). With respect to the first component, the Plaintiffs alleged several instances in which the County purportedly treated them differently from "similarly situated individuals." [4] However, even assuming *arguendo* that the Plaintiffs have met their burden of demonstrating a genuine dispute of material fact with respect to disparate treatment, they have not offered any evidence that the Defendants intended to discriminate against the Plaintiffs based on the Plaintiffs' race. Instead, the Plaintiffs contend that the alleged disparate treatment *is* evidence of discriminatory intent. This argument is conclusory and is insufficient to satisfy their burden of demonstrating a genuine issue of material fact regarding discriminatory intent and to rebut the Defendants' assertion in their motion for summary judgment that the Plaintiffs lacked evidence of discriminatory intent. *Clark v. Owens*, 371 Fed.Appx. 553, 554 (5th Cir.

2010) (unpublished) (per curiam) ("[C]onclusory assertions that [one] was treated differently than other similarly situated [persons] are insufficient to state an equal protection claim.") (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)); *VRV Dev. L.P. v. Mid–Continent Cas. Co.*, 630 F.3d 451, 455 (5th Cir.2011) ("[A] party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions."). Accordingly, we conclude that summary judgment was warranted in favor of the Defendants on the Plaintiffs' equal protection claim.

## III. Tortious Interference with Business Relations Claim

Under the Mississippi Tort Claims Act ("the MTCA"), governmental entities are immune from suit for torts committed by those entities or their employees. Miss. Code Ann. § 11–46–3. Although this immunity is waived for tort claims based on injuries caused by governmental entities or their employees in the course and scope of their employment, the waiver does not extend to injuries caused by conduct constituting, *inter alia*, malice. *Id.* § 11–46–5. The Mississippi Supreme Court has held that "[t]ortious interference with business relations and contracts requires proof of malice as an essential element." *Zumwalt v. Jones Cnty. Bd. of Supervisors*, 19 So.3d 672, 688 (Miss.2009). "Therefore, the MTCA does not apply to [tortious interference with business relations], and any legal

---

bonds written. "Our inquiry, however, is limited to the summary judgment record and the plaintiffs may not advance on appeal new theories or raise new issues not properly before the district court to obtain reversal of the summary judgment." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n. 1 (5th Cir.1994). Because the Plaintiffs did not advance this theory below, it was not properly before the district court and will not be considered on appeal.

4. For instance, after Percy Gusta was ordered out of the ADC, A. Sonshine Bonding Company, purportedly composed entirely of white employees, was subsequently allowed to enter the ADC and write bonds, despite Sonshine's prior removal from the List. Also, the Plaintiffs claim that they were not allowed by Sheriff Byrd to use a property lien to secure a bond, a practice allegedly regularly practiced by "white bonding companies," such as A. Sonshine and Lee Bonding Company.

action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual." *Id.*

■ The Plaintiffs have not named Sheriff Byrd in his individual capacity in this suit. Rather, they have sued him in his official capacity. When an employee of a governmental entity is sued in his or her official capacity, this "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (internal quotations marks omitted). Because the MTCA precludes tortious-interference-with-business-relations suits against governmental entities, and no individual was named in the suit here, summary judgment in favor of the Defendants on this claim was appropriate.

## IV. Liability of Jackson County

For Jackson County to be held liable under § 1983, there must be "proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001). Because the writing of bail bonds does not give rise to a constitutionally protected interest, the third element, violation of a constitutional right, is lacking, thus barring the County from being held liable under § 1983 for any constitutional violation.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.