Clarence McDonald LELAND, Plaintiff,

v.

**MISSISSIPPI STATE BOARD OF REGISTRATION FOR PROFESSIONAL ENGINEERS AND LAND SURVEYORS, et al., Defendants.**

Civ. A. No. 3:93–CV–193(L)(C).

United States District Court,
S.D. of Mississippi,
Jackson Division.

Nov. 9, 1993.

Jane Sanders Lewis, Lewis & Lyons, Jackson, MS, for plaintiff.

Robert E. Sanders, Mississippi Atty. General's Office, Jackson, MS, for defendants.

*MEMORANDUM OPINION
AND ORDER*

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendants Mississippi State Board of Registration for Professional Engineers and Land Surveyors (Board) and the members of the Board, in their official and individual capacities,[1] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Clarence McDonald Leland has responded to the motion and the court, having considered the memoranda of authorities together with attachments submitted by the parties, concludes that the motion should be granted in part and denied in part.

The facts underlying this lawsuit are set forth in detail in plaintiff's complaint and exhibits, and are to a large extent undisputed. Plaintiff graduated from Louisiana Tech University in 1969 with a degree in electrical engineering. In 1971, plaintiff sat for and passed the EIT, an eight-hour national professional examination, and has been registered as a professional engineer in Louisiana since 1976. He has been registered as a professional engineer in Texas since 1984.[2]

Upon graduation, plaintiff began working as an electrical engineer and in 1979, became president and chief executive officer of an engineering firm in Lake Charles, Louisiana. In 1990, plaintiff decided to attend law school. Because he wanted his legal education to be from a Christian school and wished to remain in close proximity to Louisiana, plaintiff narrowed his choices to Mississippi College in Jackson, Mississippi and Baylor University in Waco, Texas. Plaintiff ultimately decided that he would enroll in Mississippi College, but only if he could gain registration in Mississippi as a professional engineer so that he could continue to work to support himself and his family.

Plaintiff communicated with the Board regarding the procedure for being licensed in

---

1. The Board members are David W. Arnold, Rosemary Brister, Joe L. Brown, Robert M. Case, Maury Bayne Gunter, Robert Kilmer Hunter, Bobby R. Redding, Robert Martin Scholtes, Ryland Eugene Sneed and Edward Springer.

2. Plaintiff subsequently received his master's degree in business administration in 1977 from McNeese State University in Lake Charles, Louisiana.

Mississippi and, in response to his inquiry, was provided with an application form along with photocopies of excerpts from the Mississippi Code relating to engineer applicants. The excerpts sent to plaintiff included Miss. Code Ann. § 73–13–23, which set out the qualifications of engineers, and Miss.Code Ann. § 73–13–35, which recited the requirements for licensing by comity. In May 1991, plaintiff submitted to the defendant Board his application for registration as a professional engineer in the State of Mississippi, along with a $75 application fee. The Board notified plaintiff by letter dated May 31 that his application had been received and would be "presented at the first meeting of the Board" following the completion of the application process. Thereafter, in June 1991, plaintiff was informed by letter from Lynne Masters, Executive Director of the Board, that the Board had issued a certificate of registration of plaintiff as a professional engineer in Mississippi, effective June 28, 1991, "on the basis of graduation, plus experience, examination and registration in another state."

In August 1991, plaintiff enrolled at Mississippi College as a full-time law student. Initially, plaintiff lived in Mississippi and his wife and children remained in Louisiana. Within a few months, though, plaintiff had decided that he enjoyed law school and wished to continue his legal education, so he wanted his family to move to Mississippi at the end of his children's first school term. In November 1991, plaintiff purchased a home in Brandon, Mississippi and began negotiations to sell his engineering business in Louisiana. The following month, plaintiff's wife and children, along with his eighty-five

year old mother and seventy-five year old father-in-law, moved to Mississippi.

In the meantime, on November 19, 1991, the Board sent a letter to plaintiff's Louisiana home address, via certified mail, advising that the Board had discovered that plaintiff's registration had been approved in error. The letter recited that because plaintiff had not passed the Principles and Practices of Engineering examination (the PE), his registration was not in accordance with the legal requirements for registration in Mississippi. Plaintiff was given two options: withdraw his application and surrender his seal, or take the PE. Plaintiff states that although this letter was sent to his home, he did not immediately become aware of the letter, since it was received by his fifteen-year old daughter, who did not mention the letter and mislaid it. Plaintiff did receive from the Board in late November or early February a publication entitled "Application Instructions," which contained detailed information concerning the procedures for registration and qualifications for initial registrations and comity registrations,[3] but because plaintiff was unaware of the November 19 letter, he apparently did not know why this had been sent to him. The application indicated that under the rules of the Board, applicants were required to have taken and passed two professional examinations, including the PE.[4] Subsequently, by letter dated December 8, 1992, the Board returned to plaintiff a $30 renewal fee which he had paid upon receiving a renewal notice from the Board in November 1991. The Board's letter indicated to plaintiff that the renewal notice had been sent in error, since "[t]he Board notified you

3. Plaintiff soon came to realize that this document was intended as a follow-up to the Board's November 19 letter to him, but he did not know this when he first received the "Application Instructions."

4. The instruction form stated, in part, as follows: The Board's rule on registration by comity states, "Applicants registered on [sic] any state or territory or possession of the United States or any country prior to July 1, 1968, may be accepted for registration provided the applicant's qualifications meet the requirements of Section 73–13–1 through 73–13–45 of the Mississippi Code of 1972. Certificates of appli-

cants registered in any state, territory, possession of the United States or any country from and after July 1, 1968, may be accepted for registration only when the requirements in that state, territory, possession or country are equivalent to the requirement of 73–13–1 through 73–13–45. **(In other words, both the EIT & PE Exams are required of all applicants for registration by comity whose initial registration occurred after 7/1/68.). Therefore, an applicant applying for registration by comity should complete Section 2 of the application form, advising when and where the EIT and the PE examinations, if taken, were passed.**

earlier this year that your registration was issued by mistake and therefore invalid." [5]

In January 1992, the Board's attorney wrote to plaintiff advising him that the unregistered practice of engineering was unlawful, and threatening plaintiff with a disciplinary hearing if he failed to comply with the instructions set out in the Board's November 19, 1991 letter. Plaintiff alleges that in response to this letter, he telephoned Rosemary Brister, Executive Director of the Board, and questioned the Board's action. He explained that he knew nothing of any rule requiring the taking of an additional professional examination as a prerequisite to licensure and advised that under his interpretation of the comity statute, his license was properly issued. According to plaintiff, Brister responded that the rule controlled over the statute and insisted that he would have to take the additional examination if he wanted to be validly registered. On February 24, 1992, after this conversation, plaintiff wrote a letter to the Board, explaining his situation and asking that the Board reconsider its action of declaring his registration invalid. He offered to "meet with the Board or the Director [and] furnish any other information that would be helpful, or do whatever [he] [could] to persuade the Board to reconsider [its] action." The Board, however, without notice to the plaintiff or any further communication with the plaintiff, met, reviewed his letter and "reconsidered" his application. By letter from Maury B. Gunter, Board President, dated February 27, 1992, Mr. Leland was advised that the Board, upon consideration, remained of the view that his registration was invalid and that he must therefore relinquish his seal to a Board investigator.

### PLAINTIFF'S CLAIMS

Plaintiff filed this action pursuant to 42 U.S.C. § 1983, contending that defendants' conduct violated his rights to due process and equal protection under the Fifth and Fourteenth Amendments. He seeks injunctive relief and additionally requests an award of compensatory damages for lost wages and profits and for mental distress, and punitive damages.

### ELEVENTH AMENDMENT

Initially, the Board and the defendant Board members in their official capacities seek summary judgment contending that plaintiff's suit against them is barred by the Eleventh Amendment since the state has not consented to being sued in federal court. The Eleventh Amendment is a jurisdictional bar that prohibits a federal court from hearing a claim against a state and its agencies and instrumentalities, regardless of the nature of the relief sought. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Eleventh Amendment also bars suits against state government officers where the effect of the suit will be that damages will be paid from the state treasury. Consequently, if the defendant Board is an agency or instrumentality of the State of Mississippi, then no action may be maintained against the Board, and the individual defendants in their official capacities are immune from plaintiff's claim for money damages.

The parties here dispute the status of the Board and hence the applicability of the Eleventh Amendment. Defendants maintain that the Board is an arm of the state; plaintiff insists that it is not. In *McDonald v. Board of Mississippi Levee Commissioners,* 832 F.2d 901 (5th Cir.1987), the court set forth the factors pertinent to the analysis of a particular entity's powers and characteristics as created by state law for the purpose of determining whether that entity is a state agency or merely an agency which exercises a "'slice of state power.'" *Id.* at 906 (quoting *Jacintoport Corp. v. Greater Baton Rouge Port Comm'n,* 762 F.2d 435, 438 (5th Cir.1985)). These factors include:

(1) whether state statutes and case law characterize the agency as an arm of the state; (2) the source of funds for the entity; (3) the degree of local autonomy the entity enjoys; (4) whether the entity is concerned primarily with local, as opposed to statewide, problems; (5) whether the entity has authority to sue and be sued in

---

5. Upon receiving this letter, plaintiff tried unsuccessfully to locate the earlier Board letter.

its own name; and (6) whether the entity has the right to hold and use property. *Id.* (quoting *Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129, 131 (5th Cir.1986)). State law does not expressly characterize the Board as an arm of the state, so the first factor weighs neither for nor against immunity. *See McDonald*, 832 F.2d at 906–07.[6] The "most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *Id.* at 907. With respect to the issue of funding, the Board is a "state special-fund agency" which receives no appropriations from the state general fund, but is supported from special fund sources, including legislative appropriations. As explained by the affidavit of Dr. Ed Ranck, Executive Director of the Mississippi Department of Finance and Administration, all monies collected by the Board are paid into the state treasury, where a special fund account is maintained for the Board, and monies legislatively appropriated to the Board are charged against the Board's special account. The Board, like any other state agency, operates from the legislative appropriations and is subject to the same requisites and restrictions applicable to other state agencies. This factor weighs in favor of finding immunity.

"Another important factor is the entity's degree of local autonomy because it measures the closeness of the entity's connection to the state and because it protects a state's public policy and internal affairs from federal interference." *Id.* (citing *Jacintoport,* 762 F.2d at 442). In this case, the defendant Board is created by statute, Miss.Code Ann. § 73–13–5, and its five members are appointed by the governor, who has the power to remove any member of the Board for misconduct, incompetency, neglect of duty or other sufficient cause. The Board is required to make an annual report to the governor of its transactions for the year, and file with the secretary of state a copy of its report. Otherwise, the Board functions in a relatively independent fashion in its limited sphere of responsibility in the sense that there is little apparent direct supervision over or reporting of the Board's activities. It bears emphasis, though, that the Board's activities and authority are defined and controlled by state statute and the potential autonomy of the Board is for that reason limited.

The Board is concerned solely with the regulation of the practice of engineering in Mississippi and thus, its interest extends statewide. It is specifically authorized by statute to institute proceedings in its own name, *see* Miss.Code Ann. § 73–13–15(b), though a review of the relevant code sections discloses that the scope of the proceedings which may be brought by the Board relates to matters affecting the Board's function and primarily, the prevention of the unauthorized practice of engineering and land surveying. There is no provision for suit against the Board in its own name. Nor do the statutes relating to the Board address the Board's right to hold and use property, but an affidavit by Al Tuck, Director of the Department of Property within the State Auditor's office, states that, with the exception of personal property belonging to Board employees, all property located in the Board's office belongs to the State.[7]

 Weighing each of these factors, the court concludes that the defendant Board is a state agency which enjoys Eleventh Amendment immunity from this action. The conclusion thus follows that plaintiff's claims against the Board must be dismissed as must plaintiff's claims for money damages against the Board members in their official capacities. However, as the court has indicated, the Eleventh Amendment does not bar plaintiff's claim against the individual defendants in their official capacities for prospective injunctive relief. *See Kentucky v. Graham,*

---

6. Defendants suggest that this characterization is derived through implication. State statutes relating to matters of finance and budget include in the definition of the term "state agency" special-fund agencies such as the Board. *See* Miss.Code Ann. § 27–103–105(3). However, as the Fifth Circuit observed in *McDonald*, "[a] reference to the [Board] as an 'agency' of the state ... does

not amount to a characterization of the [Board] as an arm of the state." *Id.* at 907.

7. Although Miss.Code Ann. § 73–13–5 relieves the state of any duty to provide office space and office equipment for the Board, it appears that the state has, in fact, provided this space and equipment for the Board's operation.

473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Nor does it bar plaintiff's claims against these defendants for monetary relief in their individual capacities.[8]

### FAILURE TO STATE A CLAIM

■ Defendants claim that plaintiff's complaint fails to state a claim for relief and must therefore be dismissed. Specifically, defendants maintain that at most, plaintiff has alleged a violation of state law for which redress is not available in this action. The court is convinced that there was a violation of state law. The notification to plaintiff that a certificate of registration had been issued recited that it was issued on the basis of "graduation plus experience, examination, and registration in another state." Section 73–13–23, which sets out the qualifications for registration as a professional engineer other than by comity, provided, at the time of plaintiff's registration, as follows:

> Engineers—graduation plus experience and examination. (a) Graduation in an approved engineering curriculum of four (4) years or more from a school or college approved by the board as of satisfactory standing; a specific record of four (4) years as qualifying engineering experience indicating that the applicant is competent to practice engineering, and the successful passing of a written, or written and oral, examination, in engineering as prescribed by the board; or
>
> (b) A specific record of eight (8) years or more of qualifying engineering experience subsequent to graduation from high school, indicating that the applicant is competent to practice engineering; and subsequently passing a written, or written and oral examination designed to show knowledge and skill approximating that attained through graduation in an approved four-year engineering curriculum, and to show competence in the use of such knowledge and skills in the practice of engineering.

Nothing in the statute required that plaintiff have passed *two* professional examinations as a prerequisite to registration. Indeed, the statute required only that he have successfully passed "*a* written, or written and oral, examination" in engineering or designed to show knowledge in engineering. It is undisputed that plaintiff had passed the EIT. Furthermore, the comity statute provided, in unambiguous terms, for registration of "any person who holds a certificate of qualification issued to him by proper authority of the national council of engineering examiners, or of any state ... of the United States ... provided that the applicant has held such certificate of registration for a period of ten (10) or more years and has continued to practice." At the time of his application to the Board, plaintiff had been certified as a professional engineer in Louisiana for over ten years and was engaged in the active practice of engineering.[9]

■ Though not altogether clear from their submissions, it seems that defendants do not challenge plaintiff's qualifications for registration under these statutes, but rather take the position that regardless of what these statutes may say with respect to qualifications and registration, since the Board's rules require that all applicants, whether comity applicants or initial applicants, have taken the two professional examinations, plaintiff was not qualified for registration. The law is quite clear, however, that where there exists a conflict between a state's statutes and the rules and regulations of its agencies, the statute controls. *Crosby v. Barr*, 198 So.2d 571 (Miss.1967) (where regulation of administrative agency is adverse to clear meaning of statute, statute controls). The Board's insistence that its rules control over the statutes is therefore unfounded and so, too, is its insistence that plaintiff was unqualified and that his registration was issued by mistake.[10] Under Mississippi's stat-

---

8. In their individual capacities, these defendants seek summary judgment claiming they have qualified immunity. This issue is addressed *infra*.

9. Plaintiff was also registered as a professional engineer in Texas, though his Texas certificate was issued less than ten years before his application to the Mississippi Board.

10. Plaintiff has alleged that he spoke with Rosemary Brister upon learning that his certificate had been cancelled and, after reading the comity statute to her, pointed out that he met the requirements of that statute. According to plaintiff, Ms. Brister responded that "she did not care what the statute said ... [and that] the Board

utes, *which control the issue,* plaintiff was most likely qualified for registration as an initial registrant and was manifestly qualified for registration by comity.[11] As defendants correctly point out, though, the mere fact that defendants have violated state law will not support plaintiff's claim in this federal forum. The issue instead is whether plaintiff's federal rights were violated. *See Neuwirth v. Louisiana State Board of Dentistry,* 845 F.2d 553 at 558 (5th Cir.1988).

## DUE PROCESS

Plaintiff claims that his due process rights were violated because defendants revoked or rescinded his certificate of registration without notice and without granting him either a pre- or post-revocation hearing. Defendants contend that plaintiff's due process claim must fail as a matter of law since (1) plaintiff had no property interest in his certificate, and (2) even if he had a property interest, plaintiff received all the process that was due him before the Board's corrective action became final.

■ It has long been recognized that professional licensure can be the subject of a property interest subject to due process requisites. *See, e.g., White v. Franklin,* 637 F.Supp. 601, 610 (N.D.Miss.1986); *Mississippi State Board of Psychological Examiners v. Hosford,* 508 So.2d 1049 (Miss.1987). Plaintiff claims that once he was issued a certificate of registration by the Board, he

acquired a property interest in that certificate or license. Obviously, defendants contend otherwise.

■ The comity statute pursuant to which plaintiff's license was issued, as it read in 1991 when plaintiff applied for registration, recited that "[t]he board *may,* upon application therefor and the payment of a fee in accordance with section 73–13–25, issue a certificate of registration as a professional engineer" to qualified persons. The Board insists that the statute's use of the term "may" as it pertains to the issuance of registration to non-residents conclusively establishes that the plaintiff had no property interest in his license since that term granted the Board the discretion to decide whether to issue a certificate of registration. The fact of such discretion would necessarily preclude a legitimate claim of *entitlement* to a license.[12] Indeed, in *Neuwirth v. Louisiana State Board of Dentistry,* 845 F.2d 553 (5th Cir. 1988), the Fifth Circuit concluded that the use of the word "may" in a licensure reciprocity statute, "as opposed to mandatory language as 'shall,' " indicated a legislative intention to bestow discretion on the Louisiana Dentistry Board as to licenses granted by reciprocity and that consequently, the statute could give rise to no constitutionally protected interests by a rejected applicant. *Id.* at 557.

The conclusion that plaintiff had no property interest in his license is not quite so

rule controlled." Plaintiff has also submitted the affidavit of Lynne Masters, former Executive Director of the Board, who states that in the course of helping draft revisions to the statutes governing the Board, she became aware that the Board had promulgated rules which conflicted with the comity requirements of § 73–13–35 since the statute allowed applicants from other states with the requisite experience to forego a particular national examination. According to Ms. Masters, she brought this conflict to the attention of someone involved with legislative drafting and was advised that because the rule was more restrictive than the state statutes, the Board could not withhold registration from applicants who met the requirements of the statute. Ms. Masters states that she informed the Board of this conflict and was instructed to get the law changed. The statute was eventually amended to eliminate the comity provisions and now requires applicants to take the additional examination. However, the amendment to the statute did not

become effective until July 1, 1991, after the plaintiff's registration.

11. Ms. Masters states in her affidavit that she was given authority by the Board to register out-of-state applicants which qualified for registration under the comity statute. Ms. Masters further states that though she cannot specifically recall her handling of plaintiff's application, she has reviewed the plaintiff's application and is of the opinion that because he met the statutory qualifications and was in good standing in the States of Louisiana and Texas, the issuance of his certificate was normal procedure and was not a mistake.

12. Of course, it is well established that a mere unilateral expectation of a benefit will not support a finding that a property interest was created. Rather, there must be a legitimate claim of entitlement. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

obvious as defendants suggest. Were the issue here simply whether the plaintiff, prior to issuance of the certificate of registration, had a constitutionally protected property interest in an engineer's license from the Board, the answer would likely be that he did not, for the reasons stated in *Neuwirth*.[13] The issue, though, is not that simple. Here, as contrasted with *Neuwirth*, the Board did not consider and deny an application for licensure. Rather, the Board considered and *granted* an application, and registered the plaintiff as a professional engineer in Mississippi. Only after he had enrolled in law school in Mississippi, purchased a home in Mississippi, sold his business in Louisiana and moved himself and his family to Mississippi did the Board discover its alleged "mistake" in issuing the license.[14] As plaintiff argues, upon issuance of the registration, the focus shifted from what the Board "may" do to what the Board actually "did" do. The question, then, is not one of entitlement to a license before it was issued, as in *Neuwirth*, but rather is whether a property interest attached to the license after it was issued. The court concludes that to this question, the answer is yes.

Mississippi law provides that "[t]he issuance of a certificate of registration by [the Board] shall be prima facie evidence that the person named therein is entitled to all the rights and privileges of a registered professional engineer while the said certificate remains unrevoked or unexpired." Miss.Code Ann. § 73–13–29. Thus, regardless of the reason for issuance of plaintiff's certificate, the fact that it was issued entitled plaintiff to the "rights and privileges of a registered professional engineer," until the license was revoked, expired or, as defendants contend, some "corrective" action was taken. In the court's opinion, plaintiff had a property interest in his certificate and was consequently entitled to due process before being deprived of that interest. *See White v. Franklin*, 637 F.Supp. 601 (N.D.Miss.1986).

Defendants argue that plaintiff cannot establish a due process violation even if he had a property interest in his certificate since plaintiff was afforded all process that was due him. In this vein, they contend that plaintiff never asked for a due process hearing and was not entitled to a due process hearing in any event since there was no dispute as to the facts surrounding the issuance and subsequent revocation of his certificate. As to the former contention, it certainly cannot be said that plaintiff failed to request to be heard by the Board, as the record reflects that in his February 24, 1992 letter to the Board, plaintiff asked the Board to review its decision regarding the rescission of his certificate and specifically asked to be allowed to "meet with the Board or the Director, furnish any other information that would be helpful, or do whatever I can to persuade the Board to reconsider this action." As to the latter contention, while perhaps no factual question was presented for the Board's consideration,[15] there was a "serious legal theory" which plaintiff sought to address to the Board and about which he requested to meet with the Board. *Cf. Sullivan v. Carignan*, 733 F.2d 8 (1st Cir.1984) (where plaintiff had not pointed to any relevant factual question or serious legal theory he was precluded from bringing to the Board's attention by lack of a hearing, no due process violation was established). The Board was required by law to provide plaintiff an opportunity to be heard on this matter "at a meaningful time and in a meaningful

---

13. The court would note that while the comity statute, § 73–13–35, is couched in discretionary terms, i.e., "may," § 73–13–29, which is applicable to certificates of registration generally, provides that "[t]he Board *shall* issue a certificate of registration upon payment of registration fee as provided for in sections 73–13–1 through 73–13–45, to any applicant who, in the opinion of the board, has satisfactorily met all the requirements of said sections." Section 73–13–35 would appear to fall within the coverage of this section.

14. As the court has indicated *supra*, defendants' contention that the license was issued mistakenly and in error is untenable, in the court's view, in light of the clear language of the comity statute.

15. Plaintiff insists that there was a factual issue concerning the Board's failure to apprise him of the requirements of its rules before issuing his certificate and before plaintiff sold his business and uprooted his family for the move to Mississippi. The court, however, need not determine whether this constituted a relevant factual question for the Board's consideration.

manner." *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). The court is unable to conclude on the present motion that the Board satisfied its obligation in this regard.

## QUALIFIED IMMUNITY

The individual board members seek summary judgment contending that plaintiff's claims against them in their individual capacities must be dismissed on the basis of qualified immunity.[16] The court concludes that their motion in this regard is not well taken. These defendants enjoy no qualified immunity for actions which violated clearly established constitutional rights of which defendants knew or reasonably should have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Here, as the court has previously observed, the existence of a property interest in professional licensure was clearly established at the time of the actions complained of in this case, as was the requirement that the deprivation of a property interest be attended by due process.[17]

## EQUAL PROTECTION

In his complaint, plaintiff alleges that defendants have violated his right to equal protection guaranteed by the Fourteenth Amendment because others, similarly situated, were granted professional licenses without having passed or being required to pass the second national examination. In support of their motion for summary judgment as to plaintiff's equal protection claim, defendants have presented the affidavit of Rosemary Brister, Executive Director of the Board, who states that an internal audit performed in October 1991 revealed that plaintiff was the only unqualified applicant erroneously licensed by the Board. Defendants thus claim that plaintiff's claim fails as a matter of proof since there were simply no other applicants who were similarly situated yet treated differently.

In response to defendants' motion, plaintiff asserts that the facts of this case are not at this stage in the litigation sufficiently fleshed out to establish that no genuine issue of material fact exists regarding whether he was denied equal protection of the law. He points out that approximately eighty percent of applications made to the Board during 1990 and 1991 were by out-of-state registrants and argues that he is entitled to verify the qualifications of these applicants and the procedures used in processing their applications before his equal protection claim can be dismissed. He, therefore, asks that the court stay consideration of defendants' motion as it relates to his equal protection claim until such time as discovery has been undertaken. The court will grant plaintiff's request and stay consideration of defendants' motion on his equal protection claim.

**16.** In addition to their claim that they have qualified immunity in their individual capacities, these defendants contended in their motion that plaintiff's claim against them in their individual capacities should be dismissed because plaintiff had failed to plead his claim with sufficient particularity to overcome defendants' qualified immunity, as required by *Elliott v. Perez,* 751 F.2d 1472 (5th Cir.1985). Plaintiff responded to defendants' motion by requesting leave to amend to state his claims more specifically. Defendants have now withdrawn this aspect of their motion in light of the Supreme Court's recent decision in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), wherein the Court ruled it improper to apply a heightened level of scrutiny to a complaint against a public official. Defendants maintain that their withdrawal of this part of their motion renders plaintiff's motion to amend moot. Plaintiff has not advised the court of his position on his motion to amend in light of defendants' withdrawal of this part of their motion. In that defendants' motion prompted plaintiff's motion to amend and that defendants have now withdrawn this part of their motion, it would seem that plaintiff's motion to amend is indeed moot. The court will thus deny the motion to amend, subject to a proviso. Should plaintiff take the position that the proposed amendment to his complaint is necessary or desirable notwithstanding defendants' withdrawal of this part of their motion, he is free to re-urge that motion to the court.

**17.** Lynne Masters states in her affidavit that the Board's attorney, as well as hearing officers from the state Attorney General's office, had on several occasions advised Board members of the requirements necessary to provide sufficient due process in situations like the plaintiff's. Ms. Masters further states that "[a]t no time would a license have been revoked or in any manner or withdrawn without a hearing."

## CONCLUSION

Based on the foregoing, it is ordered that defendants' motion is granted in part and denied in part, as set forth herein. It is further ordered that plaintiff's motion to amend is denied and plaintiff's motion for a stay of defendants' motion on his equal protection claim is granted and shall be in effect until such time as the parties shall have had an opportunity to conduct discovery in this cause.

ORDERED.