TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00628-CV






Joon S. Lee, M.D., Appellant


v.


Texas Workers' Compensation Commission and Rod Bordelon, Appellees (1)






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN401080, HONORABLE DARLENE BYRNE, JUDGE PRESIDING





O P I N I O N


 Appellant Joon S. Lee, M.D., sought declaratory and injunctive relief in response
to an order of the Texas Workers' Compensation Commission (2) denying him admission to the
Commission's approved doctor list ("ADL"), which prevents him from treating patients under the
workers' compensation system. On cross-motions for summary judgment, the district court granted
the Commission's motion and denied Lee's. We will affirm the summary judgment in favor of
the Commission.



BACKGROUND

 To be eligible to treat injured patients and to receive payment under the workers'
compensation system, a doctor must be listed on the ADL. See Tex. Lab. Code Ann. § 408.022(a)
(West Supp. 2005). (3) Texas Labor Code section 408.023 provides the basis for admitting a doctor
to the ADL and establishes the Commission's authority to adopt rules in furtherance of maintaining
the list. Id. § 408.023 (West Supp. 2005); see also 28 Tex. Admin. Code § 180.20(a) (2008). Under
the version of section 408.023 that was in effect until August 31, 2001, each doctor licensed in Texas
was automatically admitted to the ADL "unless subsequently deleted and not reinstated." See Act of
May 22, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1178 (amended 2001 and
2005) (current version at Tex. Lab. Code Ann. § 408.023).

 In 2001, the legislature overhauled the workers' compensation system and
amended section 408.023 of the labor code, ending the practice of automatic admission to the ADL. 
See Act of June 17, 2001, 77th Leg., R.S., ch. 1456, 2001 Tex. Gen. Laws 5167, 5168 (amended
2005) (current version at Tex. Lab. Code Ann. § 408.023). The 2001 amendment required
the Commission to "develop a list of doctors licensed in this state who are approved to provide
health care services under this subtitle." Id. As provided under the amended statute, doctors became
eligible for inclusion on the ADL if they "register[ed] with the commission in the manner prescribed
by commission rules" and they "complie[d] with the requirements adopted by the commission under
this section." Id. Upon approving a doctor for admission to the ADL, the Commission was required
to issue the doctor a certificate of registration. Id. "In determining whether to issue a certificate
of registration, the commission may consider and condition its approval on any practice restrictions
applicable to the applicant that are relevant to services provided under this subtitle." Id. The statute
further provided that the Commission, by rule, "shall provide a reasonable period, not to exceed
18 months after the adoption of rules under this section, for doctors to comply with the registration
and training requirements of this subchapter." Id.

 In addition to authorizing the Commission to "develop" the ADL, the amended
statute addressed how the Commission shall "maintain" the list. See id. at 5169 (amended 2005)
(current version at Tex. Lab. Code Ann. § 408.0231). Section 408.0231 stated that the Commission
by rule shall establish criteria for deleting or suspending a doctor from the ADL and for imposing
sanctions. Id. "The criteria for deleting a doctor from the list or for recommending or imposing
sanctions may include anything the commission considers relevant," including "evidence from the
commission's medical records that . . . the doctor's charges, fees, diagnoses, treatments, evaluations,
or impairment ratings are substantially different from those the commission finds to be fair
and reasonable based on either a single determination or a pattern of practice." Id. at 5169-70. The statute also created the position of "medical advisor," a doctor employed by
the Commission who would consult with the Commission regarding, among other things,
"disciplinary actions imposed on a physician . . . who applies for registration or is registered with
the commission on the list of approved doctors." Id. at 5171 (current version at Tex. Lab. Code Ann.
§ 408.0511). The medical advisor was required to establish a medical-quality review panel to make
recommendations concerning "the addition or deletion of doctors from the list of approved doctors
under Section 408.023" and, more generally, "appropriate action regarding doctors" and other health
care providers. Id. (current version at Tex. Lab. Code Ann. § 413.0512).

 In response to the labor code amendments, the Commission began the process of
amending its rules in order to implement the new legislative scheme. To discharge its statutory
duties to develop and maintain the ADL, the Commission adopted rule 180.20. See 28 Tex. Admin.
Code § 180.20. Under rule 180.20, doctors who wished to be included on the ADL would have to
apply for admission by September 1, 2003. See id. § 180.20(a)(1) (providing that ADL as it exists
on August 31, 2003, is "null and void as of September 1, 2003," and that any doctor on ADL prior
to September 1, 2003, who does not reapply or whose application is not approved will no longer be
on ADL). Until September 1, 2003, while the Commission was in the process of reviewing
the applications, the ADL would automatically include "all doctors licensed in Texas on or after
January 1, 1993, and doctors licensed in other jurisdictions who have been added to the list by the
commission," unless the doctor had been deleted from the list by the Commission. Id. § 180.20(b). 
 Doctors who applied for admission to the ADL by the September 1, 2003 deadline
could be granted a "temporary exception" to the requirement that they must be on the ADL in order
to treat workers' compensation patients, allowing those doctors the benefits of inclusion on the ADL
while their applications under the new scheme were pending. See id. § 180.20(e) (providing
that Commission may grant temporary exception to requirement to be on ADL to ensure that
employees have access to health care pending Commission action on doctor's application); see also
Act of June 17, 2001, 77th Leg., R.S., ch. 1456, 2001 Tex. Gen. Laws 5167, 5169 (amended 2005)
(current version at Tex. Lab. Code Ann. § 408.023(i)(1)) (providing that Commission may
grant exceptions to requirement that doctor who performs functions under workers' compensation
system must be on list of approved doctors in order to ensure that employees have access to health
care). The rule made clear, however, that being granted a temporary exception "does not constitute
'being on the ADL,' 'approval to be on the ADL,' or 'denial of an application to be on the ADL.'" 
Tex. Admin. Code § 180.20(e).

 Under rule 180.20(d), the Commission determined that it could "utilize members of
the Medical Quality Review Panel for evaluating ADL applications and making recommendations
to the Medical Advisor to approve, approve with condition(s) or restriction(s), or deny admission
to the ADL." Id. § 180.20(d). The rule authorized the Commission to deny an application for
admission for one of three reasons: (1) failure to complete required training; (2) having relevant
practice restrictions; or (3) "other activities which warrant application denial or restriction such as
grounds that would require or allow the Medical Advisor to recommend deletion of a doctor from
the ADL." Id. § 180.20(f)(1)-(3).

 Lee, a board-certified diagnostic radiologist, was licensed to practice medicine in
Texas in 1977. Therefore, he was automatically admitted to the ADL under the prior law and
provided diagnostic radiology services to workers' compensation patients as a Commission-approved
doctor. According to Lee's pleadings, thirty to forty percent of his practice was related to services
that he provided to injured employees under the workers' compensation system from 1993 until the
events leading to this appeal.

 Lee applied for admission to the ADL under the revised statute on May 29, 2003,
and was granted a temporary exception "pending further action or subsequent review by the
Commission." The temporary exception was effective September 3, 2003, and ordered to expire on
September 1, 2005. In its letter granting Lee a temporary exception, the Commission advised Lee
that his temporary-exception status "is conditioned on [his] compliance with the Statute and
Commission Rules," emphasized that "[p]articipation in the Texas workers' compensation system
is not a right," and informed him that the conferral of temporary-exception status "does not waive
the Commissioner's right to take action at a later date based on audit or other information."

 While Lee's application for admission was being processed, the Commission initiated
a review of Lee's radiological evaluations. A medical-quality review panel including two board-certified diagnostic radiologists conducted a preliminary review by studying medical records in
fourteen of Lee's previous cases and comparing its conclusions with Lee's. In all fourteen cases,
the review panel disagreed with Lee's findings and impressions. Furthermore, the review panel
determined that there was an "unjustifiable difference" between Lee's findings and impressions and
the acceptable standards of care in all fourteen cases. (4) Lee was notified of these preliminary findings
by letter dated December 8, 2003. In that letter, the Commission advised Lee that he could review
these findings for discrepancies or errors and respond to each finding, attaching any additional
documentation to support his position, and that he must submit his response by December 22, 2003.

 Lee timely submitted a response, challenging the review panel's readings in each of
the fourteen cases and offering additional evidence in support of his methodology. The executive
council of the medical-quality review panel reviewed Lee's response but nevertheless concluded
that it would recommend that the Commission deny his application to the ADL. Thereafter, Lee
was notified that the medical advisor and the medical-quality review panel had determined that
Lee "failed in [his] duties as a consulting doctor and a health care provider." Specifically, the review
panel found that Lee had "provided health care that was found to not meet professionally recognized
standards" by (1) failing to fulfill his responsibilities as a health care provider; (2) having
unjustifiable differences between his findings and acceptable standards of care; and (3) having
unjustifiable differences between his impressions and acceptable standards of care.

 On March 5, 2004, Lee was officially notified of the Commission's intent to deny his
ADL application and again provided an opportunity to respond. In reply, Lee disputed the review
panel's findings, argued that he had not been given enough time or an opportunity to fully develop
and present qualified expert opinion information, and requested a hearing at the State Office of
Administrative Hearings before the Commission took any further action. The Commission informed
Lee on March 29, 2004, that his response "did not convince the Commission to grant [Lee]
admission to the ADL," offering the following explanation:


1. You disagree with the overall findings and conclusions of Medical Quality
Review #03-QR-044.


Commission's Rationale: The matters you submitted in support of this contention
were reviewed. The process used to conduct the review and the time provided for
response were sufficient. The findings and conclusions were correct.


2. You assert that these matters can be determined only by hearing and you request
a hearing before the State Office of Administrative Hearings.


Commission's Rationale: The Commission disagrees that a hearing is required on
this matter. You are not entitled to a hearing under State or Federal law. Further,
neither the Texas Workers' Compensation Act nor the Commission's Rules provide
for a hearing on this matter before the State Office of Administrative Hearings
(SOAH). Your application is being denied pursuant to the procedures set forth in
Rule 180.20. You were afforded due process rights in accordance with the
procedures set forth in Rule 180.20(g).



 After the Commission denied his application, Lee filed suit for declaratory judgment
asserting that rule 180.20 exceeds the Commission's statutory grant of authority and that, because
he was entitled to a hearing at SOAH, he was denied due process and due course of law under the
federal and state constitutions. Lee also sought a temporary injunction to prevent the Commission
from denying him admission to the ADL during the pendency of his suit, which the district court
granted. The parties then filed cross-motions for summary judgment, and the district court granted
the Commission's motion and denied Lee's. Lee now appeals.


STANDARDS OF REVIEW

 The standards for obtaining a traditional summary judgment are well established: the
movant must show that there is no genuine issue of material fact and that he is entitled to judgment
as a matter of law. Western Invs., Inc. v. Urena, 162 S.W.3d 547, 550 (Tex. 2005). In deciding
whether there is a disputed material fact issue precluding summary judgment, the court must take
evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the
nonmovant, and resolve any doubts in the nonmovant's favor. M.D. Anderson Hosp. v. Willrich,
28 S.W.3d 22, 23 (Tex. 2000) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985)); see Tex. R. Civ. P. 166a(c).

 We review the trial court's decision to grant summary judgment de novo. Texas Mun.
Power Agency v. Public Util. Comm'n, 253 S.W.3d 184, 192 (Tex. 2007). When the parties file
cross-motions for summary judgment and the trial court grants one motion and denies the other, the
reviewing court should review the summary judgment evidence from both sides, determine all
questions presented, and render the judgment that the trial court should have rendered. FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

 On appeal, Lee argues that the Commission's promulgation of rule 180.20 exceeded
its rule-making authority. An agency's construction of a statute that it is charged with enforcing
is entitled to serious consideration by reviewing courts, so long as that construction is reasonable
and does not contradict the plain language of the statute. Employees Ret. Sys. v. Jones, 58 S.W.3d
148, 151 (Tex. App.--Austin 2001, no pet.). To determine whether an agency's rule is valid, we
must ascertain whether the rule is contrary to the relevant governing statutes, State v. Public Util.
Comm'n, 131 S.W.3d 314, 321 (Tex. App.--Austin 2004, pet. denied), and whether the rule is in
harmony with the general objectives of the statutes involved, see Liberty Mut. Ins. Co. v. Griesing,
150 S.W.3d 640, 648 (Tex. App.--Austin 2004, pet. dism'd w.o.j.). In construing a statute, our
objective is to determine and give effect to the legislature's intent by looking to the statute's plain
and common meaning. Texas Workers' Comp. Comm'n v. Patient Advocates, 136 S.W.3d 643, 652
(Tex. 2004); Bragg v. Edwards Aquifer Auth., 71 S.W.3d 729, 734 (Tex. 2002). If a promulgated
rule has no supporting statutory authority, the rule is void. Office of Pub. Util. Counsel v. Public
Util. Comm'n, 104 S.W.3d 225, 232 (Tex. App.--Austin 2003, no pet.); see also Tex. Gov't Code
Ann. § 2001.174(2)(A)-(B) (West 2007) (reviewing court must reverse or remand case for further
proceedings if agency's actions violate statutory provision or exceed agency's statutory authority).



DISCUSSION

 In his first issue, Lee asserts that the Commission exceeded its statutory authority
by promulgating rules that allowed the Commission to effectively terminate the ADL that existed
prior to August 31, 2003, and to create a new ADL from which Lee was excluded. Lee argues in
his second issue that the Commission lacked the authority to deny his application to the ADL on
grounds not identified in the labor code. In his third issue, Lee alleges that his constitutional rights
to due process and due course of law were violated when he was deleted from the ADL without an
administrative hearing.


Challenge to rule 180.20(a)(1)

 Lee asserts that the legislature, by amending section 408.023 of the labor code, did not
intend to abolish and replace the pre-existing ADL but sought only to allow the Commission to
prospectively "develop" the list. The legislature's choice of the word "develop" in section 408.023,
Lee argues, implies "a gradual unfolding or growth of something, such as an ADL that unfolds or
grows gradually under new procedures," and not the termination of the existing ADL and
the creation of an entirely new list. According to Lee, the ADL was to remain wholly unchanged,
but for dropping from its rolls those doctors who failed to register with the Commission. Therefore,
because rule 180.20(a)(1) declares that the pre-September 1, 2003 ADL is "null and void," Lee
maintains that the rule is invalid on its face.

 As an agency, the Commission is a creation of the legislature with no inherent
authority and only those powers that are "expressly conferred upon it." See Public Util. Comm'n
v. City Pub. Serv. Bd., 53 S.W.3d 310, 316 (Tex. 2001). However, when conferring a power upon
an agency, the legislature also "impliedly intends that the agency have whatever powers are
reasonably necessary to fulfill its express functions or duties," see id., and the legislature is not
required to include every specific detail or anticipate all unforeseen circumstances when enacting
an agency's authorizing statute, Public Util. Comm'n, 131 S.W.3d at 321.

 The legislature vested the Commission with the power and authority to promulgate
rules as necessary for the implementation and enforcement of the Texas Workers' Compensation
Act. Tex. Lab. Code Ann. § 402.061; Patient Advocates, 136 S.W.3d at 652. The rules of an agency
are presumed to be valid and the challenging party has the burden of proving that the rule is invalid. 
TXU Generation Co. v. Public Util. Comm'n, 165 S.W.3d 821, 829 (Tex. App.--Austin 2005,
no pet.). Therefore, in order to prevail on his challenge to the facial validity of rule 180.20, Lee must
show that the rule (1) contravenes specific statutory language; (2) runs counter to the general
objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of
or inconsistent with the relevant statutory provisions. See City of Corpus Christi v. Public Util.
Comm'n, 51 S.W.3d 231, 236 (Tex. 2001); Office of Pub. Util. Counsel, 104 S.W.3d at 232. Lee
asserts that rule 180.20(a)(1), by terminating the ADL that existed until August 31, 2003, is invalid
because it improperly abolished the pre-existing ADL, contrary to the legislature's intention for the
ADL to continue in existence while the Commission implemented new registration criteria. We find
this argument to be without merit.

 Section 408.023(a) of the amended labor code authorizes the Commission to
develop and adopt requirements for admission to the ADL. See Tex. Lab. Code Ann. § 408.023(a). 
Compliance with those requirements and the Commission's rules regarding registration makes a
doctor "eligible" for inclusion on the ADL. Id. Doctors who satisfy these eligibility requirements
may then be issued a certificate of registration, a decision made by the Commission in exercise of
its discretion. See id. § 408.023(c) (Commission may "condition its approval on any practice
restrictions applicable to the applicant that are relevant to services provided") (emphasis added). 
Only a doctor who is "approved by the Commission" is given a certificate of registration, see id.,
which a doctor is required to hold in order to perform functions under the Act, see id. § 408.023(f). 
 These provisions give the Commission the authority to determine the basis on which
a doctor may be admitted to the ADL. In arguing that any doctor who satisfies section 408.023's
eligibility requirements is automatically entitled to admission to the ADL, Lee disregards the
legislature's investment of discretionary power in the Commission to develop requirements for
admission and to review applications based on the criteria that it develops. Contrary to Lee's
interpretation, meeting the eligibility requirements does not entitle a doctor to admission--indeed,
no doctor is entitled to automatic admission under the new legislative scheme, in marked contrast
to its predecessor statute. Rather, satisfying the eligibility requirements by registering with the
Commission is simply a precondition that must be met before the applicant is entitled to further
review. Had the legislature sought to limit the Commission's inquiry solely to whether the applicant
had registered for the ADL in accordance with Commission rules, it could easily have done so. 
Instead, the legislature has given the Commission the responsibility to "approve" applications
deemed worthy under its own rules, and with that discretion comes the concomitant power to
"disapprove" applications.

 Thus, it is clear from the statute that when the legislature ended the practice of
automatic admission and directed the Commission to approve doctors to be placed on the list, it
intended to create a new review process that would necessarily result in some doctors' exclusion
from the list, even doctors who had previously been included on the ADL. Nowhere in the statute
is it set forth that the entire membership of the previous ADL would be carried forward under
the new scheme, or that the Commission's power to review and approve or disapprove an application
shall be applied only to new doctors who were not previously on the ADL. As the Commission
points out, the legislature could have included a "grandfather clause" to maintain the status of
doctors who had previously been on the ADL if that had been its intent. (5)

 Because rule 180.20(a)(1) is consistent with the relevant provisions of the labor code
and does not contravene any specific statutory language, we hold that it is valid and overrule
Lee's first issue.


Challenge to rule 180.20(f)(3)

 Lee next asserts that the Commission improperly denied him admission to the ADL
for a reason not authorized by the statute. According to Lee, the statute permits the Commission to
deny admission to the ADL "only when the doctor is not eligible" as a result of the doctor's failure
to comply with the Commission's registration requirements. Lee maintains that his application
was erroneously denied on the basis that he had "provided health care that was found to not meet
professionally recognized standards"--a rationale that is only appropriate for deleting a doctor from
the ADL, not for denying him admission. In Lee's view, the Commission's rulemaking authority
with respect to approving doctors to the ADL is derived solely from section 408.023 of the labor
code. Noting that the deletion of doctors from the list is dealt with in a different section of the
statute, section 408.0231, Lee maintains that any factors the Commission may consider in deciding
to delete a doctor from the ADL cannot enter into the Commission's decision to admit a doctor to
the list. Because Lee's interpretation is contrary to the general objectives of the statute and fails to
account for the interrelatedness of these provisions of the labor code, we must reject it.

 Under the Commission's rule, a doctor shall be denied admission to the ADL for
"activities which warrant application denial or restriction such as grounds that would require or
allow the Medical Advisor to recommend deletion from the ADL." See 28 Tex. Admin. Code
§ 180.20(f)(3). The statutory basis for rule 180.20(f)(3) comes from the grant of authority to the
medical advisor to make "recommendations regarding the adoption of rules to impose sanctions
or delete doctors from the commission's list of approved doctors under Section 408.023." See
Tex. Lab. Code Ann. § 413.0511(b)(4) (West Supp. 2005). The Commission under section 408.0231
may develop criteria for deleting a doctor from the ADL or imposing sanctions that include
"anything the commission considers relevant." See Tex. Lab. Code Ann. § 408.0231(c). The
medical advisor in turn must receive recommendations from the medical-quality review panel
regarding "appropriate action regarding doctors," including "the addition or deletion of doctors
from the list of approved doctors under Section 408.023." See id. § 408.0512(c)(1), (2). The
recommendations from the medical-quality review panel necessarily relate to the medical quality of
the doctors whose applications are submitted for review. While the statute does not define the term
"medical-quality review," such considerations as the reasonableness of a doctor's diagnoses and
evaluations and whether he practices medicine in an acceptable manner plainly fall within the ambit
of medical-quality review.

 Therefore, because the legislature has required the medical-quality review panel
to participate in the process of reviewing doctors' applications for admission to the ADL under
section 408.023, which it does by making recommendations to the medical advisor, Lee is incorrect
that the only statutory basis for denying an application is a doctor's ineligibility stemming from
his failure to properly register. To suggest that compliance with the Commission's registration
requirements is the sole criterion for determining whether a doctor will be admitted to the ADL
would read section 408.0512(c) out of the statute. If the eligibility question was the only issue for
consideration, then there would be no purpose to having the medical-quality review panel advise the
Commission regarding the addition of doctors to the ADL: either a doctor is eligible because he has
complied with the Commission's registration rules, or he is not. The medical-quality review panel's
advisory role would be meaningless if the review process hinged upon the determination of
eligibility alone. Our interpretation must harmonize and give effect to every provision of the statute,
and we cannot interpret a statute in a manner that renders any part of the statute meaningless or
superfluous. City of Marshall v. City of Uncertain, 206 S.W.3d 97, 105 (Tex. 2006) (citing City of
San Antonio v. City of Boerne, 111 S.W.3d 22, 29 (Tex. 2003)).

 Moreover, we note that the statute allows the Commission to delete a doctor
from the ADL according to criteria that include "anything the commission considers relevant." See
Tex. Lab. Code Ann. § 408.0231(c). We find no evidence in the statute that the legislature intended
the Commission to have free rein in generating deletion criteria and yet be constrained in its review
of whether a doctor should be admitted to the ADL by forcing it to accept every practitioner
who complied with the registration requirements. On the contrary, the statute reflects an intent to
give the Commission wide latitude in regulating the ADL. Section 408.023 requires only that the
Commission's rules for approving doctors to the ADL be "reasonable" and "financially related to
those doctors." Tex. Lab. Code Ann. § 408.023(b). The Commission is ordered under this section
to establish rules "regarding training, impairment rating testing, and disclosure of financial interests
as required by Section 413.041, and for monitoring of those doctors and health care providers as
provided by Sections 408.0231 and 413.0512." Id. (emphasis added). Here, in the plain language
of section 408.023, the statute expressly links the Commission's authority to promulgate rules
regarding the admission and the subsequent monitoring, discipline, and deletion of doctors,
undermining Lee's position that the Commission's rule exceeds the authority granted in
section 408.023 by referring to other sections of the labor code. Given that the very provision
ordering the Commission to develop rules for approving doctors to the ADL references the provision
governing doctors' deletion from the list, it is reasonable for the Commission's rules to reflect
that interplay.

 Because it does not conflict with the plain language or the overall objectives of
the governing statutes, we hold that rule 180.20(f)(3) is valid. Lee's second issue is overruled.


Due process

 In his third issue, Lee asserts that by effectively deleting him from the ADL, the
Commission deprived him of a property interest without first providing him notice and a hearing,
violating his procedural due process rights. (6) The Commission counters that Lee was not entitled to
due process because participation in the workers' compensation system is not a constitutionally
protected interest. In the alternative, the Commission asserts that even if some process was due
before Lee's application could be denied, the process afforded was adequate.

 Due process is implicated when the state or its agents deprive a person of a protected
liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If a constitutionally
protected property interest is at stake, we must then determine what process is due to sufficiently
protect that interest. Id. In so doing, we rely on a three-factor balancing test, weighing (1) the
private interest affected by the state action; (2) the risk of erroneous deprivation of a constitutionally
protected interest under the procedures used and the likely benefit of any additional procedures;
and (3) the government's interest, including the fiscal and administrative burdens that additional
procedural requirements would entail. Mathews v. Eldridge, 424 U.S. 319, 335 (1976); University of
Tex. Med. Sch. v. Than, 901 S.W.2d 926, 930 (Tex. 1995). At a minimum, due process requires
notice and an opportunity to be heard at a meaningful time and in a meaningful manner. Mathews,
424 U.S. at 333; Perry v. Del Rio, 67 S.W.3d 85, 92 (Tex. 2001).

 "The procedural component of the due process clause does not protect everything
that might be described as a 'benefit.'" Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005). 
"'To have a property interest in a benefit, a person clearly must have more than an abstract need
or desire' and 'more than a unilateral expectation of it.'" Id. (quoting Roth, 408 U.S. at 577). 
Instead, one must have a legitimate claim of entitlement. Id. A benefit is not a protected entitlement
if government officials may grant or deny it in their discretion. Id. Property interests are created
and their dimensions are defined largely by the language of the statute and the extent to which
the entitlement is couched in mandatory terms. See Roth, 408 U.S. at 577; Bloch v. Powell, 348 F.3d
1060, 1068 (D.C. Cir. 2003); Association of Orange County Deputy Sheriffs v. Gates, 716 F.2d 733,
734 (9th Cir. 1983).

 To determine whether a particular statute creates a constitutionally protected property
interest, we ask whether the statute or implementing regulations place "substantive limitations
on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249 (1983). Statutes or regulations limit
official discretion if they contain "explicitly mandatory language, i.e., specific directives to the
decisionmaker that if the regulations' substantive predicates are present, a particular outcome must
follow." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463 (1989) (quoting Hewitt
v. Helms, 459 U.S. 460, 471-72 (1983)). Where, however, the legislature leaves final determination
of which eligible individuals receive benefits to the unfettered discretion of administrators,
no constitutionally protected property interest exists. Roth, 408 U.S. at 567.

 As we have already discussed, the statute governing admission to the ADL invests
the Commission with discretion to decide whether a doctor's application will be approved. Contrary
to Lee's assertion, the Commission is not required to grant admission to any doctors, even those
who meet the Commission's requirements for eligibility by registering with the Commission. The
provisions of the labor code authorizing the Commission to approve from the pool of eligible
practitioners those doctors who will be allowed to practice under the workers' compensation system
leave administration of the ADL to the discretion of the Commission. Under this scheme, Lee and
others who seek admission to the ADL have no legitimate claim of entitlement to this benefit and,
thus, no constitutionally protected property interest in being admitted to the ADL. (7)

 Nor has Lee identified a right to due process resulting from his "effective deletion"
from the ADL following the 2001 legislative amendments. Procedural due process rights do not
attach where the action resulting in the alleged deprivation of property rights is legislative, rather
than administrative. It is well established that the legislature, "which creates the property interest
in the first place, may also take it away." See McMurtray v. Holladay, 11 F.3d 499, 502 (5th Cir.
1993). "The procedural component of the Due Process Clause does not 'impose a constitutional
limitation on the power of Congress to make substantive changes in the law of entitlement to public
benefits.'" Atkins v. Parker, 472 U.S. 115, 129 (1985) (quoting Richardson v. Belcher, 404 U.S. 78,
81 (1971)); see also Gattis v. Gravett, 806 F.2d 778, 781 (8th Cir. 1986) ("the legislature [that]
creates a property interest may rescind it, whether the legislative body is federal or state and whether
the interest is an entitlement to economic benefits, a statutory cause of action or civil service job
protections"). When the legislature enacts a law that affects a general class of persons, those persons
have received procedural due process by the legislative process itself. See Bi-Metallic Inv. Co.
v. State Bd. of Equalization, 239 U.S. 441, 445 (1915); United States v. LULAC, 793 F.2d 636, 648
(5th Cir. 1986).

 In overhauling the workers' compensation system, the legislature implemented a new
review process that terminated a doctor's entitlement to admission to the ADL. The choice to grant
further administrative procedures to doctors who would no longer be qualified providers under
the workers' compensation scheme was the legislature's. It chose not to do so. As this Court has
already recognized, "the state has a considerable interest in regulating the quality of medical care
offered to injured workers in the highly regulated workers compensation system." Bell v. Texas
Workers Comp. Comm'n, 102 S.W.3d 299, 304 (Tex. App.--Austin 2003, no pet.). In Bell, we
held that the doctor was not entitled to a hearing to dispute his removal from the ADL under
section 408.0231(a)(3) of the labor code, which requires that a doctor be removed if his medical
license is suspended or revoked. Id. at 304-05. We expressly reserved the threshold issue, however,
of whether a doctor has a constitutionally protected interest in the right to be included on the ADL,
noting only that this interest is clearly distinguishable from "the established right to due process
before removal of a professional license." Id. at 304. We now reach that issue and hold that there
is no constitutionally protected property interest in being admitted to the approved doctor list under
the Texas Workers' Compensation Act. (8) Lee's third issue is overruled.


CONCLUSION


 Because the district court did not err in granting summary judgment in favor of the
Commission, we affirm the order.



 

 W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear


Affirmed


Filed: December 17, 2008
1. The current commissioner has been substituted for his predecessor. See Tex. R. App. P.
7.2(a) (automatic substitution when public officer is party in official capacity).
2. Effective September 1, 2005, the Texas Workers' Compensation Commission was
abolished and reorganized under the Texas Department of Insurance, Workers Compensation
Division. See Act of May 29, 2005, 79th Leg., R.S., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469,
607-08. Since the order at issue was entered prior to the reorganization, all references in this opinion
are to the Commission and the law existing prior to September 1, 2005.
3. The statute recognizes an exception to this requirement in the case of an emergency. See
Tex. Lab. Code Ann. §§ 408.022(a), .023(f) (West Supp. 2005).
4. According to the Commission, "unjustifiable difference" in this context means findings and
impressions that are outside the margin of error expected of a competent radiologist.
5. Furthermore, the Commission notes, if Lee and others from the pre-September 1, 2003
ADL had continued to be on the list, the legislature would not have used the word "apply" because
there would be no need to apply for benefits that those doctors already enjoyed.
6. As does Lee, we will treat together his arguments under the due process clause of the
U.S. Constitution and the due course of law provision of the Texas Constitution. While the two are
textually different, we generally construe the due course clause in the same way as its federal
counterpart, see Texas Workers' Comp. Comm'n v. Patient Advocates, 136 S.W.3d 643, 658
(Tex. 2004), and will look to case law addressing both types of claims in considering Lee's assertion,
see University of Tex. Med. Sch. v. Than, 901 S.W.2d 926, 929 (Tex. 1995).
7. For the same reason, Lee had no protected interest in retaining his temporary-exception
status from the time he was notified of the denial of his application until the exception was ordered
to expire on September 1, 2005. As the Commission made clear to Lee, that status was subject to
immediate revocation based on further investigation and subsequent action by the Commission
during the pendency of its review of Lee's application.
8. As we emphasized in Bell, this is not a situation involving professional licensure or the
right to practice a profession--two instances where the property interest is clearly recognized. 
Likewise, the federal courts that have addressed the precise issue of whether a doctor has a property
interest in his continued presence on the ADL have uniformly held that he does not. See Fogel
v. Texas Dep't of Ins., No. 4:06-CV-00260, 2007 U.S. Dist. LEXIS 27616, at *12-13 (S.D. Tex.
Apr. 11, 2007) (recognizing that professional licensure or right to practice chosen profession may
be subject of property interest, but holding that presence on ADL is clearly distinguishable) (citing
Leland v. Mississippi State Bd. of Registration, 841 F. Supp. 192, 198 (S.D. Miss. 1993) (licensure);
Vander Zee v. Reno, 73 F.3d 1365, 1370-71 (5th Cir. 1996) (right to practice)); Algilani v. Texas
Workers' Comp. Comm'n, No. 3:04-CV-0848-BF, 2006 U.S. Dist. LEXIS 53285, at *10-11 (N.D.
Tex. July 18, 2006) (holding same); Weldon v. Texas Workers' Comp. Comm'n, No. 4:04-CV-516-BE, 2005 U.S. Dist. LEXIS 31541, at *12 (N.D. Tex. Dec. 6, 2005) (holding same and noting that
doctor remained free to practice medicine and treat patients outside of workers' compensation
program).